**In re the MARRIAGE OF Sharon Kay WILLIAMS and John Charles Williams.**

**Upon the Petition of Sharon Kay Williams, Appellant,**

**And Concerning John Charles Williams, Appellee.**

**No. 64171.**

Supreme Court of Iowa.

March 18, 1981.

Marc S. Harding, Des Moines, for appellant.

Keith E. Luchtel of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for appellee.

Considered by HARRIS, P. J., and ALLBEE, McGIVERIN, LARSON, and SCHULTZ, JJ.

McGIVERIN, Justice.

Sharon Williams and John Williams appeal from various provisions of the trial court's dissolution decree terminating their marriage. Sharon appeals from the property settlement and child support provisions of the decree. John cross-appeals from economic provisions and the court's grant of child custody to Sharon. We modify and affirm.

John and Sharon were married in 1959 when he was nineteen and she was fifteen. They had eight children, ranging in age from eighteen to six at the time of trial. Early in the marriage, John began operating a muffler shop. The business grew, and he currently operates four shops in Des Moines. John, along with his father and brother-in-law, owns the stores. They have attempted, unsuccessfully, to franchise the operation elsewhere in Iowa and Minnesota. Sharon's responsibilities were primarily in the home, although she did work a few hours a week early in the marriage at the muffler shop. Shortly before filing for dissolution, Sharon began training to become a nurse. She is now employed as a licensed practical nurse.

Sharon filed a petition for dissolution of marriage in November 1976. She sought custody of the children, child support, alimony and a division of the parties' property. John answered and requested custody and a property settlement.

Trial was held in February 1979 with more evidence taken in April. The court entered its decree dissolving the marriage on October 3, 1979. The court awarded custody of the six children who were still minors to Sharon. John was ordered to pay thirty-five dollars per week per child for support and provide medical insurance for the minor children. For a property division, the court awarded Sharon the family home and $40,000, payable at $300 per month without interest, household goods and an automobile. John was awarded all his business assets and was ordered to pay $2000 toward Sharon's attorney fees, plus an appraiser's fee and costs. No alimony was awarded.

Other facts will be stated as necessary in our discussion of the issues presented.

We must consider the following questions:

(1) Did the trial court err in admitting certain social workers' reports into evidence and in awarding custody of the children to Sharon?

(2) Was the property settlement equitable?

(3) Should John be ordered to contribute to the college expenses of the children or to continue support while the children are in school?

(4) Did the trial court err in ordering John to pay the fee for appraisals of real estate?

(5) Did the trial court err in ordering John to pay toward Sharon's trial court attorney fees and should John pay toward her attorney fees on appeal?

Our review of this equity action is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, but are not bound by them. Iowa R.App.P. 14(f)(7).

I. *Custody of the children.* The court granted custody of the six minor children to Sharon with reasonable visitation to John. In his cross-appeal John contends the custody should have been awarded to him. In child custody cases the first and governing consideration is the best interests of the children. Iowa R.App.P. 14(f)(15).

Before reaching the main issue, we must consider two preliminary matters raised by John.

A. *The Samson child-custody report.* After filing her petition, Sharon applied for, and the court ordered, a custody investigation by the Polk County Department of Social Services. At trial in 1979, Sharon introduced into evidence a written report by Jean Samson, the child custody investigator. Samson did not testify at trial because of illness. The report was the product of her interviews with witnesses and her observations of the home and parties. It recommended that Sharon be given custody. The court overruled John's hearsay objection, admitted the report and considered it in making its decision. John says the report should not have been considered and we agree.

This dissolution case, involving custody, was tried under chapter 598, The Code, which has no provision relaxing the hearsay rules of evidence in deciding custody. *Cf.* § 598.16 (conciliator's report part of record unless otherwise ordered by court). We have defined hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *State v. Miller*, 204 N.W.2d 834, 840 (Iowa 1973).

Because Samson did not testify, John was not afforded the opportunity to cross-examine her concerning the statements in the report about her observations and conclusions. *See generally*, Annot. 59 A.L.R.3d 1337 § 3 (1974). The report also contained hearsay on hearsay in the form of quotations from persons interviewed by Samson. In her brief, Sharon concedes the report was hearsay but contends that admission was within the discretion of the court.

One of the criteria a court may consider in deciding custody is the report or recommendation of an independent investigator or attorney for the child appointed under section 598.12. *In re Marriage of Winter*, 223 N.W.2d 165, 167 (Iowa 1974). We have never, however, sanctioned the abandonment of established rules of evidence in admitting these reports.

By analogy to the present situation, we said in discussing the role of an attorney appointed for the minor child under section 598.12:

> What the attorney discovers is frequently hearsay, sometimes only rank rumor or gossip. Therefore those who know the facts should testify in order to provide a reliable basis for the trial court's ultimate decision.

> . . . . .

> [Section 598.12] does not provide—nor did we say in *Winter*—that the trial court accept untested hearsay in lieu of sworn testimony for deciding an issue as important as child custody.

*In re Marriage of Joens*, 284 N.W.2d 326, 329 (Iowa 1979). The same principles apply here to the report of an independent investigator. Unless a social worker's written report is properly before the court by agreement or stipulation, it should not be considered after a proper objection. Annot. 35 A.L.R.2d 629 §§ 4, 7, 8 (1954).

We conclude the Samson child custody report was inadmissible hearsay. The court erred in overruling John's objection and considering the report as evidence. Because our review is de novo, we disregard the report in our consideration of the issues. *Davidson v. Van Lengen*, 266 N.W.2d 436, 439 (Iowa 1978).

B. *The home investigation after trial.* Shortly after trial was completed in February 1979, the court sua sponte, and without notice to the parties, ordered an unannounced visit by a social worker, Mrs. Cunningham, to Sharon's home to get current evidence on its conditions. The visit was made and the worker sent a written report to the court. The court stated it ordered the visit because the testimony at trial concerned events several years old. The social worker found the house was relatively neat.

After this report was received, the court sent a copy to counsel for the parties with a letter of explanation, giving either party an

opportunity to reopen the case for the purpose of putting in Mrs. Cunningham's evidence. The court scheduled another hearing and over objection of John's attorney, the case was reopened. The court placed in evidence as a court's exhibit the brief written report of Mrs. Cunningham. The court overruled John's objection that it was Sharon's duty to introduce evidence at trial about her current living conditions. Mrs. Cunningham was examined by both sides and testified in substance that she found nothing in her visit in the house that would be detrimental to the health, safety or welfare of the minor children. The court considered her written report and her additional testimony.

John contends the court erred in ordering the home visit and in considering the resulting evidence.

The record shows the court conscientiously labored to reach a decision on the custody issue that was in the best interests of the children. We are convinced that is what motivated the court to sua sponte order the post-trial visit. As an aid in deciding custody issues, trial courts have been allowed to sua sponte order a visit by an investigator. *Suzuki v. Suzuki,* 162 Colo. 204, 206, 425 P.2d 44, 45 (1967); *Ronchetto v. Ronchetto,* 173 Mont. 285, 289, 567 P.2d 456, 458 (1977) (by statute); *Martinez v. Martinez,* 49 N.M. 405, 409, 165 P.2d 125, 128 (1946); Annot. 35 A.L.R.2d 629 § 3 (1954); 24 Am.Jur.2d *Divorce and Separation* § 793 (1966). The procedure of ordering a visit sua sponte and without notice to the parties is contrary to the traditional adversary system which is the basis of trials, including trials for dissolution.

Although the trial court had the authority to sua sponte order the visit, ordinarily the gathering of evidence is the responsibility of the parties. If the court believed the record inadequate on an issue, the court could have pointed out the inadequacy to counsel for both parties. The parties could investigate further. One of the parties could then move to reopen, the necessary evidence could be offered and, if competent, received and considered. In this way the court is not acting sua sponte and the adversary system is preserved. Trial judges have long been utilizing this procedure.

■ What then should be done about the record here? Although the procedure of sua sponte ordering the visit was irregular, the court had the authority to hold another hearing. The written report of the witness, Cunningham, contained only her observations of the home on her visit. As stated in division I–A, this report was inadmissible hearsay. However, no hearsay objection to the report was made. She testified under examination from both parties on the substance of her report. Therefore, we will consider her testimony and report about the home conditions she observed in February 1979.

■ C. *Award of custody.* The principles governing our consideration of the custody award are stated in *Winter,* 223 N.W.2d at 166–67. We examine the record in light of them.

The record shows that both John and Sharon love their children despite clear failings in certain parenting skills.

John has taken a minor role in the daily care and supervision of the children primarily because of the demands of his business. He has not lived in the family home since 1973, with the exception of a short period in 1976. During this time he maintained a separate apartment or house. He frequently visits the children and takes at least some of them on outings. During the marriage he assumed the role of provider. He also was disciplinarian for the children when he was home, which was not very often in recent years.

There was evidence at trial that John had a temper and had struck Sharon on occasion. He admitted seeing other women during the marriage. Sharon also alleged that he has a drinking problem.

At the time of trial, John was thirty-nine and was living with a twenty-two-year-old female in a two-bedroom house. He testified that he planned to marry her after his marriage to Sharon was dissolved. John wants custody of the six children so that

they can live with him and his prospective wife. She admitted, and we agree, that assuming the care of six children would require a lot of adjustment by everyone. One child testified that he definitely opposed living with John. Relations between John and another child are also strained.

During the marriage, Sharon assumed the role of housewife and was responsible for seeing that the children were fed and clothed. She loves the children and that love is reciprocated. John contends that Sharon has certain deficiencies as a parent which justify awarding him custody.

Sharon has been an atrocious housekeeper. There was evidence that she allowed the home to deteriorate to the point where John refused to bring guests to their home. One babysitter refused to eat in the home and several neighbors finally felt it necessary to confront Sharon over the conditions of the home.

There is no doubt that Sharon loves the children but she has exhibited that love though permissiveness rather than the control and discipline usually associated with parenthood. Neighbors testified that in earlier years the children roamed the neighborhood, often were observed outdoors improperly dressed for the weather, and were not bathed regularly. Sharon, like John, has engaged in extramarital affairs during the marriage.

Despite the deficiencies of both parents, these children have adapted and are a close-knit, loving family. Their personal hygiene has improved as they grew older.

It would unduly extend this opinion to further catalog the deficiencies of both John and Sharon as parents. In our de novo review, we give weight to the findings and conclusions of the trial court, particularly on the credibility of witnesses. We agree that custody of the children should not be removed from Sharon where it has been, in effect, since their birth. While her lack of supervision and care for basic cleanliness in the home concerns us, there was evidence that conditions have improved. John does not have as adequate living quarters to house all the children as Sharon

does, and we are reluctant to separate the children. *Winter,* 223 N.W.2d at 168. We therefore affirm the trial court's award of custody to Sharon.

The parties so far have been able to amicably establish John's visitation rights with the children. We commend them for this and encourage John and Sharon to continue so that the children may benefit from their father's guidance as they mature.

II. *Property division.* The court awarded Sharon the family home valued at $60,000, subject to a $25,000 mortgage, household goods and a car. In addition, she received a $40,000 lump sum property division, payable at $300 per month without interest. She was employed full time as a licensed practical nurse earning $4.23 per hour. John was awarded his interest in the business and other assets worth approximately $200,000. His adjusted gross income for 1974–77 ranged from $33,000 to $53,000 per year.

■ Our consideration of this issue is governed by the criteria in *Schantz v. Schantz,* 163 N.W.2d 398, 405 (Iowa 1968), except that fault for the breakdown of the marriage is not a factor. *In re Marriage of Zoellner,* 219 N.W.2d 517, 523 (Iowa 1974). The property division should reflect uncompensated contributions to the marriage such as the raising and care of children. *In re Marriage of Ralston,* 242 N.W.2d 269, 271 (Iowa 1976).

■ Sharon did little to further the accumulation of the business assets. She took very poor care of the rather new family home, causing its value to abnormally depreciate. She also was a very poor money manager.

John was a hard worker and contributed greatly to the success of a closely held corporation and two partnerships that constitute his main business assets. However, the businesses had a cash flow problem at trial time.

Sharon contends she should have been awarded John's interest in a building that houses one of the muffler shops instead of

the $40,000 lump sum award. This would make her his landlord and could lead to practical problems in the future.

John asserts she did not contribute to the accumulation of the business assets and that the $40,000 property settlement in favor of Sharon should be terminated and commuted to sums paid to date of this court's ruling.

We believe John should be awarded all the business assets to enable him to finance the considerable support obligations placed on him.

We also conclude that other portions of the trial court's property division were justified, section 598.21, with the exception that we modify the $40,000 property settlement to Sharon to include interest on any unpaid balance. We conclude that John should have been ordered to pay $300 per month and, in addition, interest each month on the unpaid balance at the statutory rate of seven percent per year from the date the first payment was due in 1979. § 535.3, The Code 1979. John may, of course, elect to pay more than $300 per month if he wishes to avoid the interest. The decree is so modified. As modified, the trial court's property division is affirmed.

■ III. *Contribution to college education expenses of the children.* The court's decree ordered John to pay child support to Sharon through the court of thirty-five dollars per week per child to end when each child reached age eighteen, was self-supporting, or married, whichever occurred first. He also was to maintain medical insurance on each child for whom he was required to pay support. No support was ordered for the two children who had reached age eighteen at trial time. During this appeal another child has reached eighteen.

Sharon contends that John should continue to pay child support if a child seeks college education or that John at least contribute to college expenses. John says any such assistance by him should be voluntary.

We agree with Sharon that John should provide support for any of their children

between ages eighteen and twenty-two who meets the conditions stated in section 598.-1(2), The Code, as to acceptance and attendance at educational institutions. *Locke v. Locke,* 246 N.W.2d 246, 251 (Iowa 1976). We upheld the constitutionality of section 598.1(2) in *In re Marriage of Vrban,* 293 N.W.2d 198, 202 (Iowa 1980). We accordingly modify the decree's provisions on the duration of child support.

Because of the passage of time since the decree, we will make the modification as to child support effective prospectively upon issuance of procedendo from this court. We order John to pay to the clerk of the trial court for distribution to Sharon thirty-five dollars per week per child. This support shall terminate when each child reaches age eighteen, becomes self-supporting or marries, whichever occurs first. If a child between the ages of eighteen and twenty-two meets the conditions in section 598.1(2), relating to support, John's support obligation for that child shall continue. *In re Marriage of McFarland,* 239 N.W.2d 175, 180 (Iowa 1976).

The other child support provisions of the court's decree are affirmed.

■ IV. *Appraisal fees.* The court ordered John to pay fees of the appraisers who valued the parties' property. John contends he should not have to pay the fees.

Section 598.11, The Code, provides, "The court may order either party to pay the clerk a sum of money . . . to enable [the other] party to prosecute or defend the action." *Zoellner,* 219 N.W.2d at 523. Both parties apparently desired the services of the appraiser. The appraisal fees incurred were necessary for Sharon to present evidence on the value of the parties' assets. The court was within its discretion to order John to pay the fees since he is in the better financial position. *Grady v. Grady,* 204 Neb. 595, 601, 284 N.W.2d 402, 405 (1979).

■ V. *Sharon's attorney fees.* In addition to an allowance of $250 temporary attorney fees, the court ordered John to pay Sharon $2000 to apply on her trial court attorney fees. § 598.11. John contends we

should reduce the amount. We recognize this case involved a custody contest as well as substantial assets. Pretrial discovery was taken. The trial lasted four days. We give weight to the trial court finding and conclude the award was justified and should not be reduced. *In re Marriage of Beeh,* 214 N.W.2d 170, 176 (Iowa 1974).

 Sharon also has applied to us for attorney fees and other costs associated with the appeal. She has supported her application with an itemization of the time and services involved. We have authority to grant such an application. *In re Marriage of Horstmann,* 263 N.W.2d 885, 892 (Iowa 1978). Such allowances are generally based on the parties' respective abilities to pay. *In re Marriage of Willcoxson,* 250 N.W.2d 425, 427 (Iowa 1977).

We conclude and order that in addition to attorney fees allowed by the trial court, John shall pay to the clerk of the trial court for distribution to Sharon $2000 to apply toward her attorney fees on appeal. We do not fix the amount of the fee. John also is ordered to pay the taxable costs on appeal.

In summary, the trial court's decree is modified to require John to pay interest on Sharon's $40,000 lump sum property settlement, as stated in division II, and child support to continue while the children come within the terms of section 598.1(2), as stated in division III. The trial court decree is otherwise affirmed.

Attorney fees and costs on appeal are separately covered above.

MODIFIED AND AFFIRMED.