**IN THE COURT OF APPEALS OF IOWA**

No. 14-1801
Filed June 10, 2015

**IN RE THE MARRIAGE OF RACHEL HOPE SHUM**
**AND MATHEW EUGENE SHUM**

**Upon the Petition of**
**RACHEL HOPE SHUM, n/k/a RACHEL HOPE SHUM MCALPIN,**
     Petitioner-Appellant,

**And Concerning**
**MATHEW EUGENE SHUM,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Page County, Greg W. Steensland,

Judge.

     Petitioner appeals the district court's order with regard to which parent

should exercise physical care of two children. **AFFIRMED.**

     Samantha J. Gronewald of Sullivan & Ward, P.C., West Des Moines, for

appellant.

     DeShawne L. Bird-Sell of Sell Law, P.L.C., Glenwood, for appellee.

     Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, P.J.**

The primary issue in this appeal is which parent should exercise physical care of two children.

*I.     Background Facts and Proceedings*

Rachel McAplin and Matthew Shum divorced in 2004. The district court granted the parents joint legal custody of their child, born in 2002, and placed physical care of the child with Rachel. Following the dissolution, the couple reconciled and Matthew agreed to adopt a child Rachel gave birth to in 2005. The renewed relationship eventually soured and the parents once again went their separate ways.

Rachel filed a modification petition seeking physical care of the younger child. In actuality, custody of the younger child had never been previously determined. Matthew countered with a request for sole custody and physical care of both children. The district court appointed a guardian ad litem to evaluate the children's interests.

After a lengthy trial at which the guardian ad litem testified, the district court granted Matthew's request for sole custody and placed both children in his physical care, subject to visitation with Rachel. The court ordered Rachel to pay Matthew child support.

On appeal, Rachel contends the district court should have (A) granted the parties joint legal custody of the children; (B) allowed her to retain physical care of the older child; (C) granted her physical care of the younger child; (D) expanded her visitation and divided transportation costs; (E) imputed less

income to her for purposes of calculating child support; and (F) refused to consider the report of a guardian ad litem. We review the record de novo.

## II. Analysis

### A. Joint versus Sole Custody

Rachel contends the district court should have granted the parents joint custody of the children. Joint legal custody affords both parents "legal custodial rights and responsibilities toward the child." Iowa Code § 598.1(3) (2013). "[N]either parent has legal custodial rights superior to those of the other parent." *Id.*; *see also In re Marriage of Gensley*, 777 N.W.2d 705, 714 (Iowa Ct. App. 2009). Parents' "utter inability to communicate with each other" as a result of their "toxic relationship" weighs against joint legal custody. *Id.* at 715.

This is precisely what we have here. Rachel occasioned a collapse in communication about serious issues affecting the children's welfare. Her actions were at best inappropriate and at worst seriously harmful to the children. As the district court stated, the decision to deny Rachel joint legal custody was "simply a recognition of the absolute incapability of these parties to communicate and ever reach a conclusion on these kind of major decisions." No useful purpose would be served by cataloguing the conduct leading to this breakdown in the ability to co-parent. Suffice it to say the record fully supports the court's finding.

### B. Physical Care – Older Child

As noted, the older child was born during Rachel's marriage to Matthew. In the dissolution decree, the district court granted Rachel physical care of this child. Matthew sought to modify the decree. Accordingly, he had the burden of establishing a material and substantial change of circumstances since the entry

of the decree, not contemplated by the court when the decree was entered, and an ability to minister more effectively to the child's well-being. *In re Marriage of Hoffman*, ___ N.W.2d ___, ___ (Iowa 2015).

Matthew satisfied this heavy burden. *Id.* The parents characterized the older child as a loving young man. While he got along well with both of them, his mother burdened him with inappropriate adult concerns. For example, the child watched as Rachel escalated rather than defused his younger sibling's out-of-control behaviors. He gently suggested an alternate approach, to no avail. Matthew testified, "I can tell he's stressed."

Other witnesses discussed Rachel's own out-of-control behaviors in the children's presence and her decision to expose them to circumstances beyond their ken. In contrast, the witnesses described Matthew as calm and attentive to both children's needs. Without belaboring the point, we conclude Matthew established a material and substantial change of circumstances and superior caretaking ability warranting a transfer of the older child's physical care to him.

### C. Physical Care – Younger Child

As noted, Matthew adopted the younger child following his divorce from Rachel. The child's custody was not fixed prior to the district court's order in this action. Accordingly, we review the order as an initial rather than a modified physical care determination. "When considering the issue of physical care, the child's best interest is the overriding consideration." *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007).

Neutral witnesses described the child's severe tantrums in Rachel's presence and Rachel's aggravation of the tantrums. They stated the behaviors

only occurred around Rachel. These uncontrolled episodes placed the child's safety at risk. Rachel conceded as much, testifying the child made "herself unsafe and other people around her unsafe as well." Accordingly, we conclude the district court acted equitably in granting Matthew physical care of the child.

### D.       Visitation/Transportation

The court granted Rachel midweek visitation from 5:00 p.m. to 8:00 p.m. as well as every-other-weekend visitation year-round. Rachel asserts she was afforded "[l]ess than 25 hours of visitation in a two week period." She contends the court should have extended midweek visitation and every-other-weekend visitation by several hours and, during the summers, should have granted her physical care of the children every other week. She also argues the court should have ordered Matthew to share the transportation obligations.

Under section 598.41(1)(a), the court is to order visitation "which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents . . . ." Under the unique circumstances of this case, where Rachel exacerbated the stresses of both children to the point of losing control over the younger child, we conclude the district court acted equitably in declining to extend the visitation hours or grant additional summer visitation.

Visitation exchanges were to take place at a police station. Rachel does not specify how the transportation scheme should be altered. Accordingly, we decline to insert a provision on sharing of transportation.

### E.     Income for Purposes of Calculating Child Support

Rachel contends the district court imputed too much income to her for purposes of calculating child support.  She concedes the imputation of some income was appropriate, but asserts the amount should have been no more than minimum wage.[1]  On our de novo review, we disagree.

The district court found Rachel was capable of earning $35,000 annually. The court based this finding on Rachel's testimony that she earned this sum in her job with a school district.  Significantly, Rachel's proposed child support guidelines used this figure.

Although Rachel lost the school job toward the end of trial, we conclude the district court acted equitably in using $35,000 rather than minimum wage, as Rachel now proposes, given her masters in community counseling, licenses in both Iowa and Nebraska, a nascent private counseling practice, and a suggestion the job separation was triggered by Rachel's behaviors.  *See* Iowa Ct. R. 9.11(4) ("A determination of earning capacity may be made by determining employment potential and probable earnings level based on work history, occupational qualifications, prevailing job opportunities, earning levels in the community, and other relevant factors.").

---

[1] While Rachel conceded consideration of her earning capacity was appropriate, Rachel appears to fault the district court for failing to make a written finding concerning the use of earning capacity rather than actual earnings, as required by Iowa Rule of Court 9.11(4).  As will be discussed, the court applied the factors necessary for consideration of earning capacity.  But the court also used Rachel's actual earnings at the time of her initial testimony, which might render Rule 9.11(4) inapplicable.

### F.      *Guardian ad Litem Report*

Rachel contends the district court improperly considered a report prepared by the guardian ad litem.  The district court disposed of this issue by stating it only considered the guardian ad litem's live testimony.

A guardian ad litem is vested with statutory authority to perform certain duties in the children's interests.  *See* Iowa Code § 598.12(2).  Those duties include conducting interviews with the children, parents and other witnesses.  *Id.* The admission of a guardian ad litem report triggers hearsay concerns and concerns of impermissible delegation of the court's responsibility to determine physical care.  *See In re Marriage of Williams*, 303 N.W.2d 160, 163 (Iowa 1981); *In re Marriage of Joens*, 284 N.W.2d 326, 329 (Iowa 1979).

The court's admission of the report in this case did not prejudice Rachel for several reasons.  First, the guardian ad litem testified and was subject to cross-examination.  Second, the parents and other witnesses described most if not all the incidents contained in the report.  Third, to the extent the guardian ad litem elicited the children's preferences about where to live, we have not considered those preferences, given their young ages and stages of development.  *See* Iowa Code § 598.41(3)(f).  Fourth, this court has allowed the consideration of independent custodial investigations.  *See In re Marriage of Riddle,* 500 N.W.2d 718, 720 (Iowa Ct. App. 1993).  The guardian ad litem's report was essentially that.  Finally, the district court emphasized it would "come to its own conclusions and ultimately decide this case based upon those findings

and conclusions." Under these circumstances, we conclude the admission of the report does not require reversal.

**AFFIRMED.**