# IN THE COURT OF APPEALS OF IOWA

No. 15-0187
Filed May 11, 2016

**IN THE INTEREST OF J.E.,**
**Minor Child,**

**J.E., Minor Child,**
        Appellant,
and

**J.E., Father,**
        Appellant.

_____


        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.


        The child's father and the guardian ad litem appeal the court's ruling that the mother did not abandon the child.  **REVERSED AND REMANDED.**


        Karmen R. Anderson of the Law Office of Karmen Anderson, Des Moines, guardian ad litem for appellant minor child.

        David A. Morse of the Law Offices of David A. Morse, Des Moines, for appellant father.

        Beau A. Bergmann of Bergmann Law Firm, P.L.L.C., Des Moines, for appellee mother.


        Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

The father and the guardian ad litem (GAL) for the child appeal the denial of the father's petition to terminate the mother's parental rights pursuant to Iowa Code chapter 600A (2013). The father contends on appeal that the mother's parental rights should have been terminated because the evidence proved she had abandoned the child and termination was in the child's best interests. Related to the issue, the father contends the juvenile court improperly discounted the GAL's professional statement and recommendations. The GAL also appeals, contending the juvenile court erred in failing to find sufficient evidence of abandonment and the court improperly relied upon information contained in the parties' dissolution-of-marriage court file.

The mother has not seen the child, who was born in 2002, since 2010, when she failed to return the child following a scheduled visit. She also made no attempt to reinitiate contact with the child through legal proceedings until mid-2014 and has made almost no child support payments. We conclude the mother abandoned the child within the meaning of section 600A.8. We disagree with the juvenile court's finding that termination was not in the child's best interests. We therefore reverse the court's denial of the father's petition to terminate the mother's parental rights.

**I. Background Facts and Proceedings.**

The father and mother married in 2001; had a child, J.E., born in 2002; separated in 2005; and were divorced in June 2007. The dissolution decree admitted into evidence contains the court's observations that the parties had a "volatile relationship during their marriage," the mother lacked credibility in her

many allegations about the father's misconduct, and the father was "committed to whatever is best for [the child]." The decree also contained the court's observation that the father had demonstrated immaturity during the marriage, but had "convinced the court at trial . . . that he has grown up emotionally and is now taking more responsibility for [the child] both economically and through physical care." Moreover, the court noted a custody evaluator recommended that, if the mother moved out of the area, the child should be placed with the father "based in part upon [the child's] close relationship with his grandfather and the stability this relationship provides in his life."

The mother had a second child with Michael K., who lived in Alabama, and stated her intention to move to Alabama to be with him. The dissolution decree placed J.E. in the parents' joint legal custody and observed the father "must have physical custody of [the child] to maintain the necessary stability in [the child's] life and to ensure that he continue his relationships with both his parents." The mother was to have the child for extended visits over summers and holidays. The decretal court stated the mother "is not working, has no intention to work, or prospect for future employment," but was required by law to pay $50 per month in support.

In 2010, the father filed an application to show cause, asserting the mother had failed to return the child from a scheduled visit. A hearing was scheduled for May 4, 2010. The mother failed to appear at the hearing on the application, though she was represented by an attorney who moved to continue the hearing. In an order dated that same date, the district court noted "ongoing problems between these parties since their dissolution" and that "[t]he court is

very concerned about the welfare of their minor child." The court also noted there was another contempt action scheduled for hearing on June 30, and that the mother was scheduled to have the child from July 1 through August 11. The court noted there was evidence the mother was "not supportive of the [father's] parenting," and it "will not allow these matters to be in limbo until so close to the scheduled visitation, as this child deserves to know where he is going to spend this summer block of time." The court wrote, "According to [the mother's] counsel, [the mother] has recently made domestic abuse allegations against her current husband and is residing with her other two children in a battered women's shelter out of this state." The court ordered all pending matters would be heard on June 10, 2010, and pending that hearing the mother "is to have no visitation, either by phone or in person."

An order admitted from the dissolution proceedings, exhibit F, reflects the mother, again represented by counsel, failed to appear on June 10, 2010. The order references a letter from the mother indicated she was residing in a domestic violence shelter and felt she was in danger if she came to court. The father asked that the court issue an arrest warrant, which the court declined to do. The court did continue the suspension of the mother's visitation and contact with the child. The court wrote, "If [the mother] wishes to come to court here to ask for reinstatement of visitation, she should file a motion to reinstate visitation. The motion will then be set for hearing. At that time, the court will consider the pending contempt of court allegations by [the father]."

In June 2011, initiated by a request for review submitted by the mother to the child support recovery unit of the Iowa Department of Human Services, the

mother's child support was adjusted upward to ninety-five dollars per month. Records indicate the mother made child support payments for 2007 ($200), 2008 ($600), and 2009 ($550). In 2010, she paid $250 in child support. She made no payments in 2011 and paid twenty dollars in 2012. No child support payments were made in 2013.

On January 10, 2014, the mother obtained a divorce from Michael K. in Alabama and their two children were placed in the mother's physical care.

On May 29, 2014, the mother filed a motion to reinstate visitation in the Iowa court. In her motion, the mother claimed to have "made hundreds (100s) of attempts to resolve this matter" with the father "outside of court w/ ZERO response." Attached to the motion was a document labeled "attempts to contact the other party," which listed about six messages via a certified letter, emails, text messages, and phone calls to the father, and two telephone messages left with the child's paternal grandfather—all in May 2014. Also listed was a May 12, 2014 phone message to the father's "last known attorney"—"Please contact me if you are still representing [the father] and if you are not, please disregard this message." Finally, is a statement of "phonecalls [(to father)] Over the past 4 years I have made hundreds . . . of calls to which I have been blatantly ignored."

A hearing was set and later continued until October 22 upon the father's request. The August 15, 2014 order to continue stated the motion to reinstate visitation and the pending contempt matters reserved in June 2010 would be addressed on October 22.

On October 22, the mother was appointed counsel and matters were continued again. The court order stated:

[C]ounsel are instructed to meet with court administration to set a new hearing date. The matters that shall be set for hearing are the continued hearing from June 4, 2010, on the [father's] application for rule to show cause and the [mother's] motion to reinstate visitation filed on May 29, 2014.

On November 5, 2014, the father filed a petition to terminate the mother's parental rights. The same counsel who had been appointed to represent the mother in the post-dissolution proceedings on October 22 was appointed on December 11 to represent her in the private termination action.

On December 16, a one-day trial took place on the petition to terminate the mother's rights. Counsel for the mother made no motion to continue the trial.

The father testified the mother had sent him emails in 2010 and had left sporadic telephone messages through the years. He had received no emails between 2011 and when she filed the motion to reinstate in 2014. By the mother's application for appointment of counsel, the father learned she had moved to Arkansas at some point, though she had not notified him. He further testified that in October 2014, the mother asked to be able to send the child a birthday card. Despite being granted permission to do so by the court, no birthday card had been received. The father testified further that the child had an "amazing relationship" with his significant other. The father opined that reintroducing the child to the mother "would confuse him. He would not know what is going on now; how long is she going to be in the picture this time; when is the next time something could happen. I know my son best. . . . I don't want to see him go through that."

The mother testified she moved from Alabama to Arkansas in November 2010 and acknowledged she did not provide notice of her change of address to

the father or his attorney. She acknowledged she was represented by counsel in 2010 when she failed to appear at the hearing on the motion to show cause. She stated she did not seek to reinstate visitation on advice of her attorney in Alabama, who told her she should take care of her divorce to Michael K. first. The mother admitted she did not seek visitation in 2011, 2012, or 2013, though, "I've wished to do so the whole time. It's just my circumstances didn't allow it." She also testified she had sent emails to the father in 2010, but not in 2011, 2012, or 2013. She testified she made a thirty-dollar child support payment in November 2014,[1] but was not otherwise able to make payments. She acknowledged she had not contacted the child's school to request information about his progress since 2010.

The mother testified she was not able to work and was attempting to qualify for disability payments, though her social security disability application had been denied to date. When asked how she supported herself and her two other children, she testified they lived in subsidized housing and she received food stamps, state aid, and was now receiving child support from Michael K.

The mother testified she sought reinstatement of visitation in 2014: "Because I had my divorce with Michael [K.] completed. I had custody of my kids. I had a protection order against him. And I had the means to be able to come to Iowa for hearings like this because I have to drive all the way from Arkansas." While the mother testified she did not try to contact the father or the school because she thought she "would get in trouble," she also admitted she

---

[1] According to testimony, the mother's support obligation was reduced to thirty dollars per month beginning December 1, 2014.

attempted to contact the father through social media and telephone after the father's attorney told her communications should go through him.

The child's GAL made a statement recommending the mother's rights be terminated.[2] The GAL stated, in part:

> Though I understand that [the mother] had a number of things personally that she was trying to take care of, unfortunately, [J.E.] cannot be expected to sit around and wait for her to get her life together before she has any contact with him.
>
> I've met with him a couple of times. I have talked with his principal at school. I've talked with both parents and have done an independent investigation, and it is clearly not in [the child's] best interest to reinvolve himself with [the mother] after such a long stretch.
>
> He is thriving in his current environment. He's doing great at school. He is participating in all these activities. In fact, yesterday when I saw him, he was really excited because he had just broken his previous track record for running sprints.
>
> And the only issue is that [the child] has not had closure in this, so I would recommend that any termination of parental rights, if the Court chooses to do that, be accompanied by an order that that will be processed through therapy just because he has sat and wondered for five years whether his mom was going to come back in the picture, if his mom cared about him, if his mom was ever going to have contact with him again.
>
> And I do feel for [the mother] as a parent in, you know, I guess, addressing a lot of personal issues, but it is simply unfair to this child. And then that's coupled with the fact that despite the order that said no visitation, no contact, [the mother] didn't send any Christmas gifts; she didn't send any birthday cards. Even if she didn't know where [the father] was living from 2012 forward, she could have done that through [father's attorney] Mr. Morse's office.
>
> And even back in October she requested that she be allowed to do that from the Court, and then she failed to do so.

On January 14, 2015, the juvenile court entered an order denying the father's application to terminate the mother's rights. The court wrote:

---

[2] The record does not reflect that the GAL's statement was a professional statement, although that is how the court described the statement in its order.

The court is concerned with the events that led to the filing of the petition for termination and the shortness of time from the filing of the petition and its presentation to the court. . . .

The court is also concerned that while [the mother] did not visit J.E. between 2010 and the present, the main reason was the court's order of May 4, 2010, where her visitation was suspended. In addition, [the mother] testified that her counsel in her dissolution matter involving Michael [K.] recommended that she resolve that matter before turning her attention to the issue involving J.E. and her former husband. At no time between that date and November 5, 2014, did [the father] move to terminate [the mother's] parental rights even though the evidence he presented in this matter would have been the same evidence he could have submitted prior to May 29, 2014. Only after May 29, 2014, when [the mother] attempted to obtain visitation with her son, did [the father] initiate the present petition and that was not initiated until the court ordered the parties to obtain a date for [the mother's] motion to reinstate. . . .

. . . .

At the very least in order for this court to find what is in best interests of the child there needs to be presented in a termination of parental rights petition evidence that establishes by clear and convincing evidence termination is in the best interests of the child. While the evidence may establish that [the mother] failed to pay child support as required, that she failed to visit J.E. for over 5 years, [the father] has not convinced this court with clear and convincing evidence that it is in J.E.'s best interests to have his mother's parental rights terminated or that it was [the mother's] intent to abandon those rights.

Importantly, five (5) days is not a sufficient amount of time for [the mother's] counsel to present a case in her defense. . . .

The court is empathetic to [the father]'s concerns. He now is faced with a situation where a child he has nurtured and helped mature will be confronted with the prospect of his mother reappearing in his life but possibly only to disappear again. The record demonstrated that [the father] has done a good job raising J.E. He has excellent grades, he is engaged in extracurricular activities and is a happy 12 year old boy.

However, the termination of a parent's rights is an extreme measure. This action should only be exercised when the court is clearly convinced that such an action is in the child's best interests. This decision is not to be made lightly or hastily. Here the court finds that [the father] has not met that burden. Accordingly, the court finds that [the father's] petition should be denied.

The juvenile court gave little weight to the GAL's recommendation because the GAL had called no witnesses to corroborate her recommendation. The father and the guardian ad litem appeal.

## II. Scope and Standard of Review.

We review termination proceedings under chapter 600A de novo. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We give weight to the factual findings of the juvenile court, particularly with regard to witness credibility, but we are not bound by them. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). When interpreting chapter 600A, the best interests of the child involved are "the paramount consideration," but we also give "due consideration" to the interests of the child's parents. Iowa Code § 600A.1.

## III. Discussion.

The father and the GAL both assert there is clear and convincing evidence the mother abandoned the child within the meaning of Iowa Code section 600A.8(3), and the juvenile court erred in denying the petition to terminate her parental rights. They also assert the trial court improperly discounted the GAL's statement and recommendation. The mother responds she was not physically or financially able to support or visit the child, and further, she was restrained from contacting the child by the 2010 court order and the father's applications to show cause. She argues that the factors surrounding her inability to contact or support the child "were largely out of [her] control."

The juvenile court may terminate parental rights if the petitioner proves by clear and convincing evidence the parent "abandoned the child." If the child is six months of age or older,

a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:

(1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b).

The parent petitioning for termination pursuant to section 600A.8(3)(b) has the burden to show the other parent has abandoned the child. *See id.*; *see also G.A.*, 826 N.W.2d at 129. A decision to terminate must be based on clear and convincing evidence. Iowa Code § 600A.8.

*A. Judicial Notice.* The GAL contends the juvenile court erroneously took judicial notice of the contents of the parties' dissolution-of-marriage case file without the consent of the parties. The mother contends the juvenile court has discretionary authority to take judicial notice, whether requested or not, pursuant to Iowa Rules of Evidence Rule 5.201(c). Our supreme court has recently reiterated,

Judicial notice may be taken on appeal. *See* Iowa R. Evid. 5.201(f) ("Judicial notice may be taken at any stage of the proceeding."); *State v. Sorensen*, 436 N.W.2d 358, 363 (Iowa 1989) (taking judicial notice on appeal). The rule permits a court to take judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Iowa R. Evid. 5.201(a)–(b). However, "[t]he general rule is that it is not proper for the court to consider or

take judicial notice of the records of the same court in a different proceeding without an agreement of the parties." *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 861 (Iowa 1990).

*State v. Washington*, 832 N.W.2d 650, 655–56 (Iowa 2013).

Here, the juvenile court considered facts recited in the parties separate cause of action relating to their dissolution of marriage. Without their agreement, it was improper.[3] Accordingly, we will perform our de novo review in the absence of the facts elicited from the records of the dissolution proceeding not admitted into evidence.

*B. GAL's Statement and Recommendation.* The father contends the juvenile court failed to give sufficient weight to the professional statement of the GAL. The father relies upon the court's statements seemingly discounting the recommendation given via a professional statement because the GAL did not call any witnesses.

"Under Iowa law, professional statements are treated as affidavits and the attorney making the statement may be cross-examined regarding the substance of the statement." *Frunzar v. Allied Prop. & Cas. Ins. Co.*, 548 N.W.2d 880, 888 (Iowa 1996); *see also State v. Williams*, 315 N.W.2d 45, 52–53 (Iowa 1982) ("The term 'professional statement' . . . means a statement of fact presented to the court by an attorney in connection with a matter then before such court, verified in effect by the oath of such attorney, and designed or calculated to aid or influence the court in the determination of a given cause or issue." (citation omitted)). The court may consider the report of a GAL if it is properly before the

---

[3] We acknowledge the parties made reference to matters contained in the dissolution file. The court may have taken these references as an agreement to consider the file.

court by agreement or stipulation. *See In re Marriage of Williams*, 303 N.W.2d 160, 163 (Iowa 1981). While the court may consider the recommendations of a GAL, "[t]he legislature has granted to the court the responsibility to make an impartial and independent determination as to what is in the best interests of the child." *In re Marriage of Stephens*, 810 N.W.2d 523, 530–31 (Iowa Ct. App. 2012).

Here, the mother's evidence conflicted with the professional statement, and the juvenile court could determine what weight to accord the GAL's professional statement and recommendation. The GAL was entitled to make an investigation and call witnesses. *See* Iowa Code § 600A.6(2). The fact that the GAL chose not to call witnesses is a fact that may affect the weight to be given to a GAL's recommendation, although we are not convinced this would be a routine or general proposition. There are undoubtedly many cases where the parents call all the necessary witnesses. The weight to be given may be affected, however, for the same concerns expressed by our supreme court pertaining to a recommendation by an attorney appointed for minor children by the court pursuant to Iowa Code section 598.12: "What the attorney discovers is frequently hearsay, sometimes only rank rumor or gossip. Therefore those who know the facts should testify in order to provide a reliable basis for the trial court's ultimate decision." *Williams*, 303 N.W.2d at 163 (citation omitted).

In our de novo review, we decide the issues on appeal anew and give weight to the trial court's findings, especially with respect to the credibility of witnesses. *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009). Here, the juvenile court did not suggest the professional statement or recommendation

was unreliable. Rather, the trial court simply did not afford it as much weight as it otherwise might if the recommendation had been supported by the testimony of witnesses. We find no basis to reverse on this claim.

*C. Abandonment.* The mother claims a finding of abandonment is negated by her insistence she was *not* "physically and financially able to" visit the child and, in fact, she was "prevented from doing so by the person having lawful custody of the child" by the father's applications to show cause and to suspend visitation. *See* Iowa Code § 600A.8(3)(b)(1). The trial court appears to have been swayed by this argument. However, upon our de novo review, we conclude there is clear and convincing evidence that the mother did not in any manner attempt to maintain substantial and continuous or repeated contact with the child for more than four years. We acknowledge her visits were suspended, but this occurred because the mother failed to return the child at the end of a visitation in 2010. She did not seek reinstatement of visitation for four years. Moreover, it was the mother who moved out of state, making visitation more difficult and expensive.

The trial court found some significance in the fact that the father did not seek termination of the mother's parental rights until the mother filed to reinstate visitation and found he "may have used the legal process to keep J.E. from his mother." But, it was the mother who did not return the child from a visitation and who did not contribute to the child's support. The father was forced to travel to Alabama to retrieve the child; the child missed school; the father missed days at his employment; the father incurred expenses for travel and hotel; and the

mother was not paying the required amount of support. Under those circumstances, the father was entitled to file a rule to show cause.

We also note the mother was represented by counsel in 2010 and did not appear for court hearings, or seek to be heard. We observe the father may have felt no need to file a petition to terminate the mother's rights before she filed to reinstate visitation because neither he nor the child had heard from the mother for years. There is also no obligation on the part of a parent to file a petition for termination of parental rights at the earliest possible time when the grounds exist to file.[4]

Even if we assume the mother was "physically and financially unable to visit the child" or was "prevented from visiting the child by the person having lawful custody of the child," *see id.* § 600A.8(3)(b)(2), the non-custodial parent is required to maintain regular communication with the child or the child's custodian. *Id.* § 600A.8(3)(b)(2); *see also G.A.*, 826 N.W.2d at 130. The mother did not send correspondence to the child, or to the father's attorney after the attorney informed her communications should go through him. The mother acknowledged she made no attempt to communicate with the child until she got her divorce from Michael K. The mother's divorce was final in January 2014; yet, she did not seek to reinstate visitation until May 2014. We also note that the mother was granted permission by the court to send a birthday card to the child

---

[4] The juvenile court was also troubled by the "shortness of time" from the filing of the petition and the trial. However, the mother's attorney never sought a continuance and we give this fact no weight in determining whether the father has met his burden of proof.

in October 2014 (the child's birthday was in November)—yet she sent no card, even by December 2014.

The mother testified, "I've wished to [seek visitation] the whole time. It's just my circumstances didn't allow it." The "subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of acts specified . . . does not preclude a determination that the parent has abandoned the child." Iowa Code § 600A.8(3)(c). Here, the mother has made little if any effort to support or communicate with her child for more than three years. "Parental responsibility demands 'affirmative parenting to the extent it is practicable and feasible under the circumstances.'" *G.A.*, 826 N.W.2d at 130 (citation omitted); *see also In re D.M.*, 516 N.W.2d 888, 891 (Iowa 1994) ("[P]arental responsibilities include more than subjectively maintaining an interest in a child. The concept requires affirmative parenting to the extent it is practical and feasible in the circumstances." (citation omitted)).

We conclude the evidence shows the mother has not visited the child or maintained regular communication with the child, or with the father or his attorney. She has not engaged in 'affirmative parenting to the extent it is practicable and feasible under the circumstances.'" *See G.A.*, 826 N.W.2d at 130 (citation omitted). The voluntary failure of a parent to maintain regular communication can justify termination. *See In re T.B.*, No. 14-1984, 2016 WL 530990, at *7 (Iowa Ct. App. Feb. 10, 2016) ("Since at least October 2011, neither parent has visited T.B. or M.C., and even if we assume that their interest in visitation was frustrated by the guardian's actions, both the father and mother fail to satisfy the alternative means of regular communication with either the

children or the children's guardian."); *In re A.M.M.*, No. 13-0627, 2014 WL 3928877, at *2 (Iowa Ct. App. Aug. 13, 2014) (finding that a mother's lack of contact with child for sixteen months and lack of contact with custodial father for twelve months prior to termination hearing was "a marginal effort, at best, to maintain regular communication" and justified termination, even assuming that father had prevented her from having visitation with child). A showing of abandonment does not require total desertion; feeble contacts can also demonstrate abandonment. *See In re M.M.S.*, 502 N.W.2d 4, 7 (Iowa 1993).

*D. Best Interests.* The mother also asserts that termination of her parental rights is not in the child's best interests. The juvenile court determined the father failed to meet the burden to show the termination was in the child's best interests but did not illuminate upon the reasons for this conclusion. This action was brought pursuant to chapter 600A, and our review is to determine whether termination is proper under the statutory guidelines. Our paramount consideration in termination proceedings under chapter 600A is the best interests of the child. Iowa Code § 600A.1. The statute provides:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

*Id.* § 600A.1.

The record demonstrates the mother has failed to affirmatively assume the duties encompassed by the role of being a parent. The mother has had no

contact with the child since 2010. There is no significant relationship between the mother and child. A court order entered on June 14, 2010, explained her right to seek reinstatement of visitation yet no request was filed until almost four years later. Although the mother was never prohibited from contacting the child's school, she made no such effort since 2010. And while the child may have questioned his mother's absence, we are not convinced that expression of concern weighs against termination here. Even the juvenile court acknowledged the prospect of the mother "reappearing in [the child's] life but possibly only to disappear again." The child is in a stable home and appears to be excelling in life and in school. As our supreme court has observed, "There is not always the urgency in chapter 600A termination cases that we have noted in termination cases under the juvenile code (Iowa Code § 232.109 et seq.)." *M.M.S.*, 502 N.W.2d at 9. Yet here, as it was determined in *M.M.S.*, "it is past time to terminate." *Id.*

We determine termination of the mother's parental rights is in the best interest of the child. We, therefore, reverse the juvenile court and remand for entry of an order to terminate the mother's parental rights pursuant to chapter 600A.

**REVERSED AND REMANDED.**