**IN THE COURT OF APPEALS OF IOWA**

No. 19-0219
Filed May 13, 2020

IN RE THE MARRIAGE OF GABRIELLE L. KANE
AND JOHN K. KANE

Upon the Petition of
**GABRIELLE L. KANE, n/k/a GABRIELLE L. REHARD,**
        Petitioner-Appellee,

**And Concerning
JOHN K. KANE,**
        Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Randy V. Hefner,

Judge.

A father appeals the district court order modifying physical care and

dismissing his application for contempt. **AFFIRMED.**

David J. Hellstern of Sullivan & Ward, P.C., West Des Moines, for appellant.

T.J. Hier (until withdrawal), Baxter, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

John Kane contends the "unilateral actions and inactions" of his former wife, Gabrielle Rehard, prompted the district court's modification of the physical care of their two daughters. He hopes to return to their shared-care arrangement and believes Gabrielle should be held in contempt.

Like the district court, we find Gabrielle showed a substantial change in circumstances to justify modification. And John did not prove she willfully violated the original decree. We thus affirm the district court's order.

### I. Facts and Prior Proceedings

Gabrielle and John married in 2003 and divorced in 2013. In early 2017, Gabrielle petitioned to modify their dissolution decree. They have two daughters: A.L.K, born in 2005 and H.M.K., born in 2006. The decree outlined shared physical care with the parents alternating weeks. It also provided for one parent to have the children on Wednesdays during the other parent's week. In response to Gabrielle's modification request, John alleged she was in contempt of the decree.

Back in 2013, after the divorce, Gabrielle moved from the family home in Des Moines to Indianola. Then both parents provided the children transportation to school in Des Moines. John's mother helped him during his physical-care weeks because of his work schedule at John Deere. Gabrielle remarried and stayed in Indianola. Helped by her parents, she continued to transport the children to school in Des Moines. Immediately following the divorce, the parents could communicate effectively about their children's education and medical needs.

In 2017, Gabrielle relocated to Lacona—about thirty-eight miles south of Des Moines. The location was closer to her new husband's work in Knoxville and

3

they could pay lower rent on a house owned by her parents. Gabrielle worked part-time at the Hy-Vee in Indianola.

The most critical development since the decree was the emotional difficulty experienced by their older daughter, A.L.K. Both children were seeing the same therapist. But A.L.K. found it harder to cope with John's parenting style. As time went by, A.L.K decided she did not want to spend time with her father. By contrast, her younger sister, H.M.K., maintained a good rapport with John. As the district court noted: "A.L.K.'s refusal to visit John has caused arguments between the sisters." And the different tenor of the girls' relationships with their father deepened A.L.K.'s discomfort. A.L.K. started identifying situations when she felt her father treated her differently than he treated H.M.K. Meanwhile, A.L.K. suffered depression.[1] She felt bullied at her middle school, she was getting into fights, and her grades were deteriorating. Gabrielle recalled A.L.K. coming home from John's house with "anxiety, crying, not sleeping." In February 2018, A.L.K. tried to harm herself. School officials contacted Gabrielle, who took her daughter to the urgent care clinic. Gabrielle allowed A.L.K. to discontinue interactions with John based on the child's reactions to visits.

At the start of the 2018–2019 school year, Gabrielle enrolled A.L.K. in the Melcher-Dallas Community School District. She did so without consulting John. Gabrielle testified she emailed and texted John that summer about possibly changing A.L.K.'s school but "never got responses." Gabrielle defended her enrollment decision, contending A.L.K. "[h]as been soaring through. She was

[1] The record shows John didn't think A.L.K. needed the antidepressant medication prescribed by her doctor.

nervous at first being the new kid at school, new people, was scared to ask questions in the beginning, but now she has no problem asking questions if she has a problem with something." According to her mother, A.L.K. now participates in school activities and is doing better academically.

In its modification order, the district court determined: "Gabrielle has carried her burden to prove by clear and convincing evidence that the shared physical care ordered in 2013 should be terminated." The district court also decided Gabrielle was "the parent best able to minister to the daily needs of the children."

Although the court ended the alternating weeks of physical care, it advised John and Gabrielle to be flexible because the new parenting schedule was not "a statute or commandment." To resolve the lack of communication between A.L.K. and her father, the court ordered John to participate in counseling with his daughter. The court also directed Gabrielle to cooperate in the scheduling and ensure A.L.K's attendance for any session.

On the contempt issue, the court decided John had not carried his burden to show willful violation of the decree.

John now appeals the district court's rulings.[2]

## II.    Scope and Standards of Review

We review the record de novo in a proceeding to modify the custodial provisions of a dissolution decree. *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). "At the same time, we recognize the virtues inherent in listening to and observing the parties and witnesses." *In re Marriage of Pendergast*, 565

---

[2] Gabrielle's counsel did not file a final appellee's brief.

N.W.2d 354, 356 (Iowa Ct. App. 1997). So, although they are not binding, we give weight to the district court's findings of fact. *See id.*

Because the modification trial was in equity, the court allowed evidence into the record subject to John's hearsay and foundation objections. *See In re Marriage of Anderson*, 509 N.W.2d 138, 142 (Iowa Ct. App. 1993). If John challenges the admissibility of that evidence, we review for the correction legal error. *See Garland v. Branstad*, 648 N.W.2d 65, 69 (Iowa 2002). If we find exhibits were inadmissible, we may decide the case on the remaining record without remand. *See O'Dell v. O'Dell*, 26 N.W.2d 401, 417 (Iowa 1947).

## III.    Analysis

The modification outlined by the district court does not sit well with John. To begin, he argues the court erred in giving any weight to excerpts from A.L.K.'s diary and a letter from her treating physician. John next contends Gabrielle did not prove a substantial change in circumstances warranting modification. He alleges the court erred in placing physical care with Gabrielle because she created the issues leading to modification. Last, John argues the court erred in dismissing his claim that Gabrielle was in contempt.

### A.    Should we give weight to A.L.K's diary or the doctor's letter?

During the modification hearing the district court admitted into evidence—subject to objection—entries from A.L.K.'s diary chronicling her feelings about unpleasant exchanges with John.[3] The court also conditionally admitted a letter

---

[3] The district court found the diary entries were admissible as present sense impressions. A present sense impression is an exception to the hearsay rule that applies to "a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Iowa R. Evid. 5.803(1); *State v.*

written by Dr. Kandace Bass, an urgent care physician who saw A.L.K. in her clinic in February 2018. John contends the district court erred in considering these documents because they lacked a proper foundation and contained hearsay.

Assuming without deciding the disputed evidence was inadmissible, we review the modification of physical care without considering the diary entries or doctor's letter. *See In re Marriage of Williams*, 303 N.W.2d 160, 163 (Iowa 1981) (noting though district court should have sustained father's objection to child-custody report as hearsay; "[b]ecause our review is de novo, we disregard the report in our consideration of the issues"); *Erickson v. Blake*, No. 15-0251, 2016 WL 1130578, at *1 (Iowa Ct. App. Mar. 23, 2016) ("To the extent any evidence was improperly considered by the district court, reversal is not required given our de novo review of the record on appeal."). Our de novo review relies on facts independent of those exhibits.

**B.      Did Gabrielle prove a substantial change in circumstances?**

As the parent requesting modification, Gabrielle had a heavy burden. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (reiterating "once custody of children has been fixed it should be disturbed only for the most cogent reasons"). To change the shared-care provision, she had to show by a preponderance of evidence that conditions since entry of the decree had so materially and substantially changed that the children's best interests required modification. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

---

*Thompson,* 836 N.W.2d 470, 479 (Iowa 2013). Because A.L.K's journal entries seem to be more reflections than contemporaneous recordings, the exhibits do not fit the hearsay exception. *See State v. Leyba*, 289 P.3d 1215, 1220 (N.M. 2012). We do not find the exhibits were admissible as present sense impressions.

Those changed circumstances must have been outside the court's contemplation when it entered the decree. *Id.* And they must be more or less permanent and relate to children's welfare. *Id.* Once Gabrielle cleared that hurdle, she had to show she was the parent able to minister more effectively to the children's well-being. *See id.*

In its ruling, the district court detailed A.L.K.'s "self-destructive behavior" since the decree. And the court found John's response to Gabrielle's efforts to include him in discussions about A.L.K.'s psychiatric care have been "ambiguous and perhaps a bit passive-aggressive." Centering on these issues, the court found Gabrielle carried her burden to prove shared physical care should end and she was "the superior care parent." In our de novo review, we reach the same determination as the district court.

On appeal, John insists Gabrielle "unilaterally created the issues upon which the court relied to order custody modification." He contends Gabrielle "caused the hardship of distance by continually moving" farther away from Des Moines. He also condemns Gabrielle's handling of A.L.K.'s situation—including the change in her therapist, the change in her school, and withholding his parenting time with her.

We reject John's position. It is appropriate to modify custody when shared custody provisions incorporated into the decree "have not evolved as envisioned by either of the parties or the court" or when the parents simply "cannot cooperate or communicate in dealing with their children." *See In re Marriage of Harris*, 877 N.W.2d 434, 441 (Iowa 2016) (modifying joint physical-care arrangement when parents had "discordant perceptions" of their daughter's need for treatment).

When we look at the best interests of the children, we find Gabrielle's move for financial reasons and because of her new husband's job also provided a fresh start for A.L.K. In Gabrielle's view, A.L.K.'s problems and the adolescent's insistence that she "did not want to deal" with her father created a situation where Gabrielle could not both comply with the decree and safeguard her daughter's well-being. The change in schools improved A.L.K.'s overall circumstances. We do not find Gabrielle's actions were geared toward shutting down the relationship between John and their daughters. Gabrielle's willingness to transport H.M.K to school in Des Moines while living in Lacona demonstrates her dedication to the shared-care arrangement.

The record shows Gabrielle is the parent better able to minister to the needs of both children—but especially A.L.K. as she works to repair her relationship with John. The district court's order for family therapy for John and A.L.K. is an appropriate avenue to rebuild the father-daughter bond. The record shows H.M.K. is a resilient child and Gabrielle believes she will adapt well to a new school. After our de novo review, we affirm the modification order.

**C.   Did John prove Gabrielle was in contempt?**

As a final issue, John argues the district court should have held Gabrielle in contempt for three reasons: (1) she did not allow him to participate in A.L.K.'s medical treatment; (2) she "unilaterally" moved A.L.K. to the Melcher-Dallas school without his consent; and (3) she did not allow him visitation as provided in their dissolution decree.

Iowa Code section 598.23 (2017) provides if a person against whom a final decree has been entered "willfully disobeys" the decree, the court may punish the

person for contempt. John had the burden to prove his contempt allegation beyond a reasonable doubt. *See In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995). The district court decided John failed to prove Gabrielle's willful disobedience of the decree. We review that decision for substantial evidence. *Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 140 (Iowa 1988).

At the heart of our analysis is the word "willfully". To prove willful disobedience, John had to show Gabrielle's conduct was (1) "intentional and deliberate with a bad or evil purpose" or (2) "wanton and in disregard of the rights of others," or (3) "contrary to a known duty" without concern whether she had the right. *See Jacobo*, 526 N.W.2d at 866. We find substantial evidence to support the district court's determination that John's proof did not reach these standards.

Even if John made the initial case that Gabrielle failed to follow the letter of the decree as to decisions about A.L.K., Gabrielle produced evidence showing why she could not perform those duties. *See Webb v. Iowa Dist. Ct.*, 416 N.W.2d 95, 99 (Iowa Ct. App. 1987) (explaining burden of proof in contempt cases). John retained the burden to show she willfully disobeyed the decree. *See id.* Here, the lack of communication between the parents did not rise to the level of willful disobedience. In his brief, John asserts he filed the contempt action "to try to get family therapy started." The court's order seeks to satisfy that goal—without holding Gabrielle in contempt.

We affirm the dismissal of the contempt action.

**AFFIRMED.**