**Matthew WEBB, Plaintiff,**

v.

**IOWA DISTRICT COURT FOR JOHNSON COUNTY,**
Defendant.

**No. 86–1489.**

Court of Appeals of Iowa.

Sept. 30, 1987.

96

Bruce J. Nuzum of Matthias, Tyler, Nuzum, Johnson & Matthias, Newton, for plaintiff.

Thomas J. Miller, Atty. Gen., Stephen C. Robinson, Asst. Atty. Gen., and Dorothy Klosterbuer, Asst. Co. Atty., for defendant.

Considered by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

DONIELSON, Presiding Judge.

The plaintiff husband brings this certiorari proceeding in which he seeks review and reversal of the district court decision finding him in contempt of court for failure to pay child support. The husband was sentenced to jail for thirty days, unless the contempt was purged by payment of $3,500 against the back child support. The husband claims: (1) the district court did not

have subject matter jurisdiction; (2) the parties agreed to waive, release, or compromise the child support provisions of the divorce decree; (3) the wife was estopped from trying to enforce payment of child support by contempt proceedings; and (4) he was not in contempt of court for willful failure to pay child support. We annul the writ.

The plaintiff, Matthew Webb, and Lureta Kahler were divorced in 1968. The decree provided that Matthew was to pay $50 per month child support for their child, Deborah. In 1975, the parties agreed that rather than pay Lureta directly, Matthew would put money into a savings account for Deborah's education. In 1984, Lureta asked Matthew for $500 to pay for Deborah's medical bills, requesting him to send whatever was in the savings account and as much as possible otherwise. Matthew cleared out the savings account in order to send $500.

Deborah became eighteen years old on May 22, 1985. As of May 31, 1985, Matthew owed $9,850 in delinquent child support. The district court found Matthew to be in contempt of court and sentenced him to jail for thirty days unless the contempt was purged by payment of $3,500 against the back child support. Matthew then brought this certiorari proceeding seeking review or reversal of the district court decision. The supreme court granted Matthew's petition for writ of certiorari.

■ Certiorari is a procedure to test whether a lower court exceeded its proper jurisdiction or otherwise acted illegally. Iowa R.Civ.P. 306. Generally, it is an action at law so findings of fact are not reviewable. Iowa R.App.P. 4; *Lane v. Oxberger*, 224 N.W.2d 245, 247 (Iowa 1974).

■ We note at the outset that only two defenses are available in a contempt proceeding: (1) indefiniteness of the order (not alleged in the present case); and (2) absence of willfulness in disobeying the order because of inability to pay. *Bevers v. Kilburg*, 326 N.W.2d 902, 904 (Iowa 1982). However, we will nonetheless address all four of plaintiff's arguments.

■ First, Matthew argues that the trial court lacked jurisdiction to try him for contempt because Deborah was no longer a minor at the time the application was filed. He claims that a contempt proceeding must be commenced prior to a time a child reaches majority. We do not decide that issue in this matter before us. The defendant states that when the dissolution decree was issued, twenty-one was the age of majority, not eighteen, and the decree should be interpreted by the statute in effect at the time of the original award rather than the statute in effect at the time of the contempt hearing.

■ Subject matter jurisdiction may be raised at any time. *Matter of Guardianship and Conservatorship of Cerven*, 334 N.W.2d 337, 340 (Iowa App.1983). We find a close analogy in *Wilcox v. Bradrick*, 319 N.W.2d 216 (Iowa 1982), a modification proceeding, involving the jurisdictional issue at hand:

At the time of the original decree majority age was defined in section 599.1, The Code 1966, as twenty-one years. Subsequently, the legislature reduced the age of majority to nineteen years, 1972 Session, 64th G.A., ch. 1027, § 49, and again reduced it to eighteen years, 1973 Session, 64th G.A., ch. 140, § 49. While the defendant argues the oldest son "must now be viewed as any other eighteen-year-old," implying the majority age is defined under the present version of the statute, § 599.1, The Code 1981, the plaintiff insists majority age is defined under the statute in effect at the time of the original decree, § 599.1, The Code 1966. *In re Marriage of Harless*, 251 N.W.2d 212 (Iowa 1977), forecloses an extended discussion of the issue. In that case we held the legislature's lowering of majority age from twenty-one to eighteen years was to have prospective application only: "[T]he law in effect at the time of the decree should govern." *Id.* at 213. Under the circumstances of that case a father was obligated to support his child until she reached age twenty-one where the original decree, entered prior to the statutory amendment, pro-

vided for payments until the child attained majority. *Id.* Accordingly, under the rule announced in *Harless*, the parties' oldest son would reach majority at age twenty-one in the present case.

*Id.* at 217–18.

In accord with the discussion in *Wilcox*, we find the trial court did not lack subject matter jurisdiction. The law in effect at the time the decree was entered should govern. Further, assuming arguendo that Deborah did reach her majority as of the time Matthew contends, we note that the support payments put aside in the bank account were for the future education of Deborah and, hence, this matter is still properly within the trial court's jurisdiction. Iowa Code §§ 598.1(2) and 598.2 (1985).

Second, Matthew contends the parties agreed to waive, release, or compromise the child support provisions of the divorce decree. According to Matthew, he and Lureta agreed that he would pay money into the savings account whenever he could, instead of paying $50 per month in support. Third, Matthew claims Lureta is estopped from trying to enforce payment of the child support because she led him to believe he did not need to make payments if he paid what he could into the savings account. Lureta replies the facts do not support an agreement to waive nor do they support estoppel.

The exhibits in this case consist of numerous letters throughout the past nineteen years from Lureta to Matthew requesting financial help. Lureta's testimony clearly demonstrates she at no time intended to waive support of Deborah. Lureta agreed to allow a savings account to be established so that Matthew could more easily contribute to this account, rather than forcing upon him a set amount of $50 each month. Her reasons for this type of disposition can be summed up as follows: (1) she felt Matthew would feel greater at ease knowing his support payments were going directly to Deborah, rather than to her other child who was not fathered by him; (2) if Matthew could only pay $25 one month, he would have the

flexibility to pay $75 the next month; and (3) Deborah would be assured of adequate financing to help her pursue a college education. We find no intent by Lureta to release Matthew of his support obligations, especially in light of the many pleas for help on Deborah's behalf and in light of her consent to the Child Support Recovery Unit to bring suit against Matthew for back support payments.

Assuming arguendo that it was Lureta's desire to waive child support payments, our supreme court has stated in *Anthony v. Anthony*, 204 N.W.2d 829, 833–34 (Iowa 1973):

> Nor can we permit a custodial parent lightly to bargain away his child's right to support. The child's best interest is paramount here also. *See Pals v. Pals*, 186 N.W.2d 619, 620 (Iowa 1971). Public interest is also involved. Parents are legally obligated to support their children. *McNamara v. McNamara*, 181 N.W.2d 206, 110 (Iowa 1970).
>
> *       *       *       *       *       *
>
> We recognize that some agreements involving waiver of child support have been held valid between the parties although not as to the child and the public. *See* 24 Am.Jur.2d Divorce and Separation § 871. However, we believe that an agreement which is injurious to the best interest of a child is invalid for any purpose.

Obviously, $500 in child support over a period of nineteen years for Deborah's welfare was not in her best interest. For Matthew to contend otherwise is incredible.

In order for plaintiff to raise a defense of promissory estoppel, he must show that he has relied to his detriment on a promise by his former wife to forgive delinquent child support. *Merrifield v. Troutner*, 269 N.W.2d 136, 138 (Iowa 1978). As shown by the evidence, Lureta did not forgive the child support delinquency; therefore, Matthew cannot now assert this defense. Furthermore, plaintiff cannot rely on equitable defenses in a contempt proceeding. *In re Marriage of Welsher*, 274 N.W.2d 369, 371–72 (Iowa

1979). Certiorari is an action at law, rather than an equity proceeding. *Id.*

We therefore find no merit in plaintiff's second and third contentions.

▉▉ Fourth, Matthew states that he was not in contempt of court for willful failure to pay child support because he believed the savings account took the place of child support payments. Matthew claims that he never willfully disobeyed the decree. The defendant points out that Matthew failed to pay child support in the seven years before any agreement was made.

▉▉ Iowa Code section 598.23 provides that if a person against whom a decreed support order has been entered willfully disobeys that order, the person may be cited and punished by the court for contempt and be committed to the county jail for a period of not to exceed thirty days for each offense. The contemptuous actions need to be established by proof beyond a reasonable doubt. *Phillips v. Iowa District Court for Johnson County*, 380 N.W.2d 706, 709 (Iowa 1986). Contempt is sufficiently shown if some of the default was willful. *Skinner v. Ruigh*, 351 N.W.2d 182, 186 (Iowa 1984). Willful noncompliance was defined in *Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980), as conduct which is "intentional and deliberate" with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not.

The burden of proof on this issue was discussed in *Skinner*, 351 N.W.2d at 185, wherein we find:

> The court explained the burden of proof in *Lamb v. Eads* [346 N.W.2d 830 (Iowa 1984)]:
>
> > The general rule holds that an applicant for a contempt citation establishes a prima facie case by proving the duty which is on the contemner and the contemner's failure to perform the duty. The contemner then has the burden of showing he could not perform the duty, if he relies on that ground. [citations] The

principle that places the burden on the contemner to show that his default was not willful necessarily means that upon the contemner's failure to make the requisite showing the default may be found to be willful. 346 N.W.2d at 832. The contemner's burden is a burden of production on the defense of inability to perform the duty rather than a burden of persuasion. *See Harkins* [*v. Harkins*], 256 Iowa [207] at 211, 126 N.W.2d [87] at 89–90 [1964]. The burden of persuasion on the willfulness issue does not shift from the contemnee. Moreover, even if the contemnee makes a prima facie case and the contemner introduces no evidence, the court must still weigh the contemnee's evidence to determine whether the elements of the offense have been established by the requisite proof.

Plaintiff offered no evidence nor cited authority to show his failure to provide the $9,850 as required of him was anything but willful. He admitted that he is not alleging inability to pay. We find his conduct to be an utter disregard of his duty to support his daughter. We hold that his failure to pay child support was established by proof beyond a reasonable doubt and that this failure was willful. Matthew never met his burden of proof as required by *Skinner*.

We have considered all of Matthew's contentions raised in this court and find them without merit. Therefore, we affirm the district court decision in this case and hold that Judge Honsell did not exceed his proper jurisdiction nor did he otherwise act illegally. The writ of certiorari is ordered annulled.

WRIT ANNULLED.