In re the MARRIAGE OF Marcia L. SCHRADLE and Robert Schradle.

Upon the Petition of Marcia L. Schradle, Appellee,

And Concerning Robert Schradle, Appellant.

No. 89–1282.

Court of Appeals of Iowa.

Sept. 26, 1990.

William L. Springer, Marshalltown, for appellant.

Joseph R. Cahill of Cahill Law Offices, Nevada, for appellee.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HAYDEN, Presiding Judge.

The marriage of Marcia and Robert Schradle was dissolved on October 21, 1986, pursuant to a decree based on a stipulation signed by both parties. The stipulation had been drawn up by Marcia's attorney approximately eighteen months prior to the rendering of the decree. Robert had originally picked up the divorce papers from Marcia, had kept them for a week, and had returned them signed. The stipu-

lation was part of the divorce package. Marcia indicated they would save money by having only one attorney, and Robert was under the impression they were both being represented by the same attorney. A decree of dissolution was obtained and filed on October 21, 1986.

The signed stipulation, as incorporated in the decree, provided that Robert was to pay alimony in the amount of $250 per week. Marcia was awarded the parties' Oldsmobile and pickup, while Robert was awarded his Peterbilt truck used in his long distance trucking. Marcia was awarded the parties' home and the three acres of land on which it was situated. The stipulation required Robert to pay for the existing indebtedness on the home. Marcia was also awarded approximately 37 acres of land. Marcia was additionally awarded all the household goods except Robert's personal property. Robert was to maintain mortgage insurance on the home until the home was paid in full. Robert was to also maintain a $40,000 life insurance policy with Marcia as the beneficiary.

At the time of the present case, both parties were afflicted with some health problems. Robert had developed a hernia, and had to curtail some of his lifting activities. Marcia was discovered to have growths in both of her lungs, and x-rays revealed that one of the growths had changed. Marcia has thus far refused to have exploratory surgery.

For eighteen months prior to the entry of the decree, Robert had paid Marcia $300 per week support, and had made all other payments as contemplated in the stipulation. Subsequent to the decree, Robert was remarried to a woman with two children. Robert additionally purchased a new home in Baxter, Iowa, and purchased some new furniture. Marcia continued to reside in the parties' former marital home and also helped raise livestock with her father.

In August 1988 Marcia filed an application to show cause based on Robert's failure to make some of the payments outlined in the decree and stipulation. However, Robert had filed a petition for modification alleging a change in circumstances since the time of the decree. Robert assured the court he would make all such payments pending a combined trial on the issues, and no contempt order was issued.

A combined trial was ultimately held. At trial Robert testified he had to sell the parcel of real estate he was awarded in order to pay taxes. Robert also testified his 1984 Peterbilt truck had a market value of $52,000 but had encumbrances on it of $27,273. Robert testified the truck had over 610,000 miles on it and was in great need of repair. Robert testified, due to conditions in the trucking industry, he is having a difficult time getting more hours. Robert pointed out his operating expenses have greatly increased. Robert contended due to tax law changes, his deductions had been drastically reduced, and he would no longer receive an investment tax credit if he bought a new truck. Robert testified his self-employment tax had greatly increased. Robert also claimed he owed over $9,000 in federal back taxes.

The trial court determined, upon consideration of all the evidence, Robert had failed to show he had suffered a substantial loss of earnings in the trucking industry. The trial court additionally held the fact his truck needed an overhaul was not sufficient grounds to grant a modification. The court found Robert was in arrears on alimony payments in the amount of $2,600. The trial court additionally found Robert owed Marcia $224.48 for premiums she paid on the property insurance policies and $1,067 for life insurance premiums paid. The trial court found Robert in contempt as a result of his failure to make such payments. Robert has appealed.

Robert argues his earning potential has been drastically reduced due to deregulation of the trucking industry and changes in the tax laws concerning business deductions. Robert also argues he should not be held to the terms of the decree since no financial affidavits were ever filed before the decree was entered, and he was never advised of his rights since he was represented by a lawyer who also represented his wife. Robert argues since the decretal court had no knowledge of his financial

status at the time of the decree, the trial court could not have considered any of the factors to be considered pursuant to Iowa Code § 598.21(2). Robert further alleges his actions in failing to pay were not willful because of his greatly increased expenses.

Our review of this action is de novo. Iowa R.App.P. 4. Although we give weight to the trial court's findings of facts, we are not bound by them. Iowa R.App.P. 14(f)(1).

■ We first dismiss as groundless Robert's contention he was not represented by his own attorney in the initial divorce proceeding. He was a competent adult at the time of the divorce. No showing has been made of fraud, duress, or mistake sufficient to justify setting aside the original decree. *See cf., In re Marriage of Johnson*, 299 N.W.2d 466, 467–68 (Iowa 1980) (citing *Knipfer v. Knipfer*, 259 Iowa 347, 355–56, 144 N.W.2d 140, 144–45 (1966)).

■ Second, the trial court and this court are without authority to modify property distributions of the dissolution decree absent extraordinary exceptions such as fraud, duress, or mistake. *Johnson*, 299 N.W.2d at 467–68; *In re Marriage of Full*, 255 N.W.2d 153, 156–58 (Iowa 1977); *Knipfer*, 259 Iowa at 355–56, 144 N.W.2d at 144–45. The decretal court's property division can only be challenged on direct appeal. *Johnson*, 299 N.W.2d at 468. A challenge of a property division in a modification action comes too late. *Id.*

■ Third, under existing law, any support payments in arrears are a final judgment and may not be modified retrospectively. *In re Marriage of Bonnette*, 431 N.W.2d 1, 3–5 (Iowa App.1988) (citing *In re Marriage of Harvey*, 393 N.W.2d 312, 314 (Iowa 1986)). Thus, any arrearages in support payments owed by Robert are a judgment against him up to the date of the entry of the trial court's ruling on the modification action. *Bonnette*, 431 N.W.2d at 4. The decision of this appellate court is also effective as of the date of the trial court's entry of the modification decree. *Id; see also* 2 H. Clark, *The Law of Domes-*

*tic Relations In the United States* § 17.6 at 274–75 (2d ed. 1987).

With these principles in mind, we turn to the issues presented on appeal.

■ Robert urges the deregulation of the trucking industry and its consequent adverse consequences constitute a substantial change of circumstances not in the contemplation of the decretal court. The substantial change in circumstances, he claims, justify a modification of the original decree. To assess his claims, we look to the criteria for modification laid out by the Iowa Supreme Court:

A number of principles emerge from our cases: (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been in the contemplation of the trial court when the original decree was entered.

*In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983).

Substantial evidence exists in the record supporting a change of circumstances caused by deregulation of the trucking industry. In fact, deregulation appears to have had an adverse impact on several industries. Robert's witnesses testified as to the changes in the trucking industry since 1986, when the effects of deregulation really took effect. Although Marcia argues most of the deregulation actually took place in 1981 and 1982, the effects of such broad and sweeping changes to a whole industry would take a few years to actually manifest.

The tax law has changed considerably since the filing of the dissolution. Some of the provisions of the Tax Reform Act of 1986 did not go into effect until a few years later. The special tax treatment for

capital gains was erased. Other items too numerous to mention here had a substantial and unanticipated impact on the trucking industry. Neither the changes nor their full impact would have been in the contemplation of the decretal court.

Additionally, Robert has not been able to afford the necessary maintenance for his truck due to the price hikes and deregulation. If his truck is not repaired or replaced within the near future, his earning capacity will be severely impaired. *See Vetternack*, 334 N.W.2d at 763.

Several factors combine to form the material and substantial change in circumstances outlined by Robert: 1) deregulation and its attendant tremendous growth in competition, 2) the evidence presented concerning the rapid price hikes of necessary trucking supplies, 3) the rise in federal and state fuel taxes, 4) the adverse impact of the 1986 Tax Reform Act, 5) Robert's hernia necessitating hiring help and cutting back on his earning power, 6) Robert's need to repair or replace his truck to secure his future earning capacity, and 7) the increased miles Robert must drive to meet his obligations combine to form a material and substantial change in circumstances. Considering all these factors in conjunction, we find there is a material and substantial change in circumstances.

Based upon the criteria outlined in *Vetternack*, we find Robert entitled to a modification in his support payments. Our task now becomes to determine which payments are alimony and which are property.

The alimony ordered by the original decree was to be terminated at the death of one of the parties or upon remarriage. This is so-called "traditional" alimony and may be modified upon a proper showing of a change in circumstances. *See In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989). A property award, on the other hand, may only be challenged on direct appeal from the decretal court. *Johnson*, 299 N.W.2d at 468.

We find the material and substantial change in circumstances justify a modification in alimony. Accordingly, the decree is modified to provide Robert shall pay $150 per week alimony. This alimony shall be payable in monthly installments of $669.50, rather than weekly installments. Additionally, Robert is relieved of maintaining life insurance for $40,000, as this is also part of the alimony awarded in the original decree.

The property awards are a different matter. "The allocation of marital debts between the parties is as integral a part of the property division as is the apportionment of marital assets." *Johnson*, 299 N.W.2d at 467. The indebtedness to the Federal Land Bank on the property awarded to Marcia is a marital debt. It is part of the property awarded by the decree. *Id.* As mentioned above, we are without authority to modify the award of property in a modification proceeding. *Id.* Robert remains responsible for the payments to the Federal Land Bank as outlined in the decree.

## CONTEMPT

The trial court found Robert in contempt for failing to keep up on his alimony and for failing to keep his promise to a district judge. Robert had promised at a prior proceeding he would keep current on his alimony and insurance payments. He failed to do so.

A contempt proceeding is essentially criminal in nature, and each element must have been established beyond a reasonable doubt. *Phillips v. Iowa District Court for Johnson County*, 380 N.W.2d 706, 708–09 (Iowa 1986).

Only willful disobedience of a court order will justify a conviction for contempt. In this context a finding of disobedience pursued "willfully" requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or *contrary to a known duty*, or unauthorized, coupled with an unconcern whether the contemner had the right or not.

*Lutz v. Darbyshire*, 297 N.W.2d 349, 353 (Iowa 1980), *overruled on burden of proof issue only* (citations omitted).

[W]hen the evidence clearly shows the order of court has been disobeyed, a party who seeks to purge himself of contempt by showing his inability to comply with the order of the court has the burden to prove it.... Confinement should not be directed to compel a party to do something which he is wholly unable to do. But the burden of proving inability should be on the defendant, who should not be held to have sustained it when he has failed to make a good-faith effort to conform.

*Foust v. Denato*, 175 N.W.2d 403, 405 (Iowa 1970) (citations omitted); *see also Amro v. Iowa District Court for Story County*, 429 N.W.2d 135, 141 (Iowa 1988); *Webb v. Iowa District Court of Johnson County*, 416 N.W.2d 95, 99 (Iowa App. 1987).

Not only did the original stipulation and decree outline Robert's obligations, but Robert later promised a district judge he would remain current on his alimony and maintain the various insurance policies. The record demonstrates he failed to do so. His actions were "contrary to a known duty." *Lutz*, 297 N.W.2d at 353. We affirm the trial court's finding of contempt.

We hereby modify the trial court's ruling and find there has been a material and substantial change in circumstances due to deregulation of the trucking industry; the new tax laws put into effect in 1986 and thereafter; Robert's impaired medical condition, especially his hernia; and the other changes outlined above. These changes have impacted significantly and adversely upon Robert's earning power. The original decree is modified to provide Robert shall pay $669.50 per month rather than $250 per week. Robert's obligation to maintain the $40,000 life insurance policy for Marcia's benefit with Farm Bureau Insurance Company is hereby terminated.

The trial court's ruling is affirmed in all other issues before us on appeal, whether or not specifically addressed in this opinion.

Each party shall pay his or her own attorney fees on appeal.

Costs of this appeal are assessed one-half to Robert and one-half to Marcia.

AFFIRMED AS MODIFIED.

HABHAB, J., concurs.

SACKETT, J., partially concurs and dissents.

SACKETT, Judge (concurring in part and dissenting in part).

I concur in part and dissent in part. I would affirm.