**IN THE COURT OF APPEALS OF IOWA**

No. 17-1005
Filed April 18, 2018

**Upon the Petition of**
**DAMARIUS J. WASHINGTON,**
    Petitioner-Appellant,

**And Concerning**
**PORSHA COLLINS,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

Damarius Washington appeals from the district court's order denying his petition for modification of the order establishing paternity, custody, visitation, and child support and ruling on Collins' contempt allegations. **AFFIRMED AS MODIFIED; WRIT ANNULLED.**

M. Leanne Tyler of Tyler & Associates, P.C., Bettendorf, for appellant.

Ciara L. Vesey of the Law Office of Ciara L. Vesey, PLLC, Davenport, for appellee.

Heard by Danilson, C.J., and Vaitheswaran and Bower, JJ. Tabor, J., takes no part.

**DANILSON, Chief Judge.**

Damarius Washington appeals from the district court's order denying his application for modification of the order establishing paternity, custody, visitation, and child support of the parties' child, and ruling on Porsha Collins' contempt allegations. Washington asserts the court erred in determining there was not a substantial change in circumstances warranting modification of custody, finding Washington in contempt, ordering Washington to pay forty percent of his bonus to Collins for child support, and ordering Washington to pay Collins' trial attorney fees. Washington also contends the court engaged in "impermissible and unconstitutional racial stereotyping of an educated black male" throughout the proceedings. Both parties request appellate attorney fees.

We conclude the court properly reached its determination regarding the modification of physical care. We find the court's order respecting the portion of Washington's bonus to be paid for child support was not equitable and modify the provision accordingly. As to Washington's writ of certiorari,[1] we find the court properly found Washington in contempt for failure to maintain Z.'s health insurance but erred in finding contempt based on Washington's failure to provide notice for summer visitation. Because we find substantial evidence supporting one ground of Collins' application for rule to show cause, we annul the writ. We find no abuse of discretion in the district court's award of trial attorney fees and affirm. Washington is ordered to pay $2500 of Collins' appellate attorney fees.

---

[1] As we later explain, we treat Washington's appeal from the court's findings of contempt as a certiorari action.

**I. Background Facts & Proceedings.**

Washington and Collins engaged in an approximately two-year relationship. Their child, Z., was born in November 2012. In February 2013, the parties reached an agreement as to custody, visitation, and child support, and the court entered an order on the petition to establish paternity, custody, visitation, child support, and related matters (paternity order) in accordance with the parties' agreement. The parties agreed Collins would have physical care of Z., and the parties would share legal custody. Washington was to have visitation with Z. every other weekend and for four one-week periods during the summer until Z. was three years old—at which time Washington would have summer visitation for two two-week periods. The paternity order expressly required Washington to provide Collins "with written notice of the dates he chooses for summer visitation no later than April 1st." The paternity order also provided Washington "shall have such other and further visitation as is agreed between the parties."

By both parties' accounts, they co-parented without serious issue under the provisions of the paternity order until 2016. As explained by the district court:

> There was nothing filed in this case until the Child Support Recovery Unit [(CSRU)] became involved to enforce [Washington]'s child support obligation due to the child being on Title 19 services. The CSRU filed a notice of their services on May 9, 2016, and a wage withholding order on May 11, 2016.

Washington filed an application to modify the paternity order on June 20, 2016, seeking physical or shared care of Z. or extraordinary visitation. Also on June 20, Washington filed an application for rule to show cause asserting Collins had denied Washington summer visitation and "such other and further visitation" as contemplated by the paternity order. Washington also maintained Collins failed

to change Z.'s last name in accordance with the paternity order. On July 21, Collins filed an application for rule to show cause, contending Washington failed to maintain health insurance for Z. and failed to provide notice of his summer-visitation dates in writing by April 1 of each year as required by the paternity order.

After a hearing held April 18-19, 2017, the district court entered its ruling. The court held there was not a substantial change in circumstances from the time of the paternity order warranting a change in custody of Z., and ordered Z. remain in Collins' physical care. The court did find the circumstances appropriate to modify the visitation and child-support provisions of the paternity order. The court also found Washington in contempt for failing to provide notice of his summer visitation dates to Collins prior to April 1 in 2013, 2014, and 2015 and for failing to maintain health insurance for Z. Washington now appeals.

**II. Analysis.**

Washington contends the court erred in maintaining physical care of Z. with Collins, ordering Washington to pay forty percent of his bonus to Collins, finding Washington in willful contempt for failing to provide summer-visitation notice and to maintain Z.'s health insurance, and ordering Washington to pay Collins' attorney fees. Washington also asserts on appeal the district court engaged in "impermissible and unconstitutional racial stereotyping of an educated black male" throughout the proceedings.

**(1) Custody.**

Washington asserts a substantial change in circumstances based on Collins' refusal of summer visitation, refusal of phone contact with Washington, failure to share health-care and educational information, and refusal to permit additional visitation. Washington maintains the change in circumstances justifies modification of the custody provisions of the paternity order and argues Z. should be placed in his physical care.

We review the district court's custody determinations de novo. Iowa R. App. P. 6.907; *see also Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). "[W]e give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them." *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). "Our overriding consideration is the best interests of the child." *Id.* In making custody determinations under Iowa Code chapter 600B (2016), we look to the factors provided in Iowa Code section 598.41(3) as well as our case law. Iowa Code § 600B.40 .

> Courts are empowered to modify the custodial terms of a paternity decree only when there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child.

*Melchiori*, 644 N.W.2d at 368. "[T]he parent seeking to change the physical care from the primary custodial parent to the petitioning parent has a heavy burden and must show the ability to offer superior care." *Id.*

Washington contends since the time the paternity order was entered in 2013, Collins has refused him summer visitation and denied his requests for further visitation. In a letter dated April 25, 2016, Washington stated he received no

summer visitation in 2013, one week in 2014, and one and a half weeks in 2015, and he requested four weeks of summer visitation in 2016. Washington also stated Collins had refused his requests for additional visitation on more than one occasion.

However, Collins stated Washington did not receive four weeks of visitation each summer because he did not request it. She noted even the 2016 notice for summer visitation provided in the April 25 letter was nearly one month late under the terms of the paternity order. Collins explained she preferred to adhere to the terms of the paternity order respecting summer-visitation notice and additional visitation because she learned in her parenting class that failure to follow the paternity order could lead to one parent taking advantage of the other. Washington did not state Collins has refused to allow his regular visitation with Z. pursuant to the paternity order. In fact, Collins stated that on one occasion in April 2016 Washington withheld Z. from Collins after his permitted visitation time was over because she had not yet signed documentation related to changing Z.'s name.

Washington also asserts Collins has refused to communicate with him—stating she "stonewalls" him—because she does not answer or return his phone calls. However, Collins explained she has stated she will communicate with Washington only through text message because she wishes to avoid Washington's flirtatious behavior. At the modification hearing, Washington acknowledged there has been flirtatious behavior on his part toward Collins. Moreover, Washington did not state that Collins fails to respond to his text messages, only that she will not return his calls.

Washington also contends Collins has failed to keep him apprised of Z.'s medical information. Collins explained Washington has not asked for Z.'s medical information. Collins stated Z. has gone to the same doctor's office from the time of birth, and she has provided Washington information regarding Z.'s appointments. Collins admitted she has not provided Washington with information regarding Z.'s dental appointments. Collins also admitted she began taking Z. to see a therapist for play therapy in July 2016 and did not inform Washington of this decision.

Last, Washington asserts Collins has not properly supported Z.'s educational development and had not yet enrolled Z. in preschool at the time of the modification hearing. Washington expressed concern that Z.—who was four years old at the time of the modification hearing—did not yet know how to write his name or tie his shoes. Collins stated she works with Z. at home with counting, shapes, colors, practicing writing his name, and learning to tie his shoes. Collins explained she did not enroll Z. for preschool during the previous year because he was still three years old and missed the cut off for enrollment based on his birthday. Collins stated Z. was signed up to begin preschool the following year.

We acknowledge the parties' relationship has been strained, especially during the pendency of these proceedings. An incident occurred on September 9, 2016, while the parties were exchanging Z. for visitation. Washington pushed or swatted Collins' arm as Collins was attempting to take a picture or video of Washington's vehicle. The incident resulted in Collins filing for a temporary protective order on October 25, 2016. Following the incident, the parties began

exchanging Z. at the police station. Collins stated there have been no other incidents during exchanges, though Washington is frequently late to arrive.

We do not find these contentions support a finding there has been a substantial change of circumstances warranting modification of custody. While Collins' strict adherence to the terms of the paternity order has not provided Washington with maximum time with Z., there is no evidence Collins has violated the visitation terms of the paternity order. Notwithstanding, we encourage every parent to recognize that court orders and decrees fixing visitation terms cannot predict or identify every important life event, and parents should be flexible in changing visitation or care arrangements so the child can attend important life events.

Washington also cannot contend Collins has failed to communicate. The record reflects good communication by Collins via text message, but we agree she should inform Washington of any medical or dental appointments in advance, if possible. The record also reflects both parties provide for the educational development of Z.

Washington has also not shown he has a superior ability to care for Z. While the parties' strained relationship is concerning, the discord between the parties has not had a disruptive effect on Z.'s life such that it constitutes a substantial change in circumstances warranting modification of custody. *See Melchiori*, 644 N.W.2d at 368. It is in Z.'s best interests to remain in the physical care of Collins and to have the maximum possible visitation with Washington. It is also in Z.'s best interests that the parties work together to successfully parent Z., including freely sharing medical-care and educational information, communicating respectfully,

following the modified terms of the paternity order, and maintaining proper boundaries in their interactions during exchanges.

In sum, we agree with the district court, physical care should not be modified because Washington has not proved a substantial change of circumstances.

**(2) Child Support.**

The district court ordered Washington to pay forty percent of his bonus income to Collins in child support after a twenty-five percent reduction of the gross amount towards Washington's income tax liability.[2]  Washington asserts this was improper.  Washington contends the order to pay forty percent of his bonus is much higher than typically ordered as reflected by our case law.  On our de novo review, *see Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005), we agree.  *See In re Marriage of Beecher*, 582 N.W.2d 510, 515 (Iowa 1998) (affirming the order to pay twenty-five percent of any net bonus received for two children, reduced to fifteen percent for one child); *In re Marriage of Allen*, 493 N.W.2d 273, 275-76 (Iowa Ct. App. 1992) (modifying the order to pay approximately forty-eight percent of the net bonus to twenty percent of the total bonus before deductions for four children); *In re Marriage of Peterson-Bayer*, No. 08-1695, 2009 WL 1492717, at *4 (Iowa Ct. App. May 29, 2009) (modifying the order to require payment of ten percent of a bonus—after reduction of thirty percent for taxes—for the support of one child); *In re Marriage of Moore*, No. 99-0280, 2000 WL 564165, at *3 (Iowa Ct. App. May 10, 2000) (reducing to ten percent of the gross bonus to be paid for child support for three children).

---

[2] The portion of Washington's bonus was to be paid for child support in addition to $713.17 per month.

We conclude the district court's order respecting the amount of Washington's bonus to be paid for child support was not equitable. The award is greater than other awards previously approved, and fails to take into consideration that Washington has two other children to support. We therefore modify the order and find Washington shall be responsible for paying ten percent of any bonus paid to him after first deducting thirty percent of the gross amount towards his income-tax liability.

**(3) Contempt.**

Washington also maintains the district court's findings of contempt were improper. Washington's contempt challenges were filed on direct appeal when they should have been filed as a petition for a writ of certiorari. *See* Iowa Code § 665.11 ("No appeal lies from an order to punish for a contempt, but the proceedings may, in proper cases, be taken to a higher court for revision by certiorari."). Although a writ of certiorari challenging the legality of the district court's action is the proper remedy, we proceed to treat the case as if Washington had filed the proper petition. *See* Iowa R. App. P. 6.108 ("If any case is initiated by a notice of appeal, an application for interlocutory appeal, an application for discretionary review, or a petition for writ of certiorari and the appellate court determines another form of review was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of review has been requested.").

"A writ of certiorari lies where a lower board, tribunal, or court has exceeded its jurisdiction or otherwise has acted illegally." *State Pub. Def. v. Iowa Dist. Ct. for Black Hawk Cty.,* 633 N.W.2d 280, 282 (Iowa 2001). "Illegality exists when the

court's findings lack substantial evidentiary support, or when the court has not properly applied the law." *Id.* (citation omitted).

We review the district court's contempt findings for correction of errors at law. *State Pub. Def. v. Iowa Dist. Ct. for Story Cty.*, 886 N.W.2d 595, 598 (Iowa 2016). When reviewing for correction of errors at law, we are bound by "the district court's well-supported factual findings" but not its legal conclusions. *State Pub. Def. v. Iowa Dist. Ct. for Clarke Cty.,* 745 N.W.2d 738, 739 (Iowa 2008) (citation omitted). "Because of the quasi-criminal nature of the proceedings, a finding of contempt must be established by proof beyond a reasonable doubt. 'Substantial evidence is such evidence as could convince a rational trier of fact the alleged contemnor is guilty of contempt beyond a reasonable doubt.'" *In re Marriage of Stephens*, 810 N.W.2d 523, 529-30 (Iowa Ct. App. 2012) (citations omitted).

Iowa Code section 600B.37 provides:

> If a party fails to comply with or violates the terms or conditions of an order may pursuant to this chapter, the party shall be held in contempt and punished by the court in the same manner and to the same extent as is provided by law for contempt of such court in any other suit or proceeding cognizable by such court.

"A party alleging contempt has the burden to prove the contemner had a duty to obey a court order and willfully failed to perform that duty." *Ary v. Iowa Dist. Ct.,* 735 N.W.2d 621, 624 (Iowa 2007). "If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful." *Id.*

> In this context a finding of disobedience pursued "willfully" requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or *contrary to a known duty*, or unauthorized, coupled with an unconcern whether the contemner had the right or not.

*In re Marriage of Schradle*, 462 N.W.2d 705, 709 (Iowa Ct. App. 1990) (citation omitted).

The district court found Washington in contempt for failing to provide written notice of his summer-visitation dates in 2013, 2014, 2015, and 2016, and for failing to maintain health insurance for Z.

Washington first argues the district court erred in finding him in contempt for failure to provide summer-visitation notice as required by the paternity order. As to summer visitation, the paternity order provided Washington "shall provide [Collins] with written notice of the dates he chooses for summer visitation no later than April 1st." Washington did not provide written notice of his summer-visitation dates until the April 25, 2016 letter, which was also provided to Collins past the April 1 deadline.

Washington contends finding him in contempt for failure to provide summer-visitation notice is equivalent to finding him in contempt for failure to exercise visitation. To some extent we agree. But the order does not require Washington to exercise visitation and he has not been held in contempt for failure to fully exercise visitation. Rather, the order simply requires that in order to exercise visitation, Washington must provide written notice of his summer-visitation dates prior to April 1 of each year.

We do, however, find the court erred in determining Washington's failure to provide summer-visitation notice rose to the level of contempt. There is not substantial evidence to establish Washington's failure to provide notice was "intentional and deliberate with a bad or evil purpose." *See Schradle*, 462 N.W.2d

at 709. Washington's conduct was to his own detriment because it prevented him from exercising his full summer visitation. While we do not find such conduct constitutes contempt, we also do not find Collins acted inappropriately in failing to provide full summer visitation to Washington when he did not comply with the notice requirements of the paternity decree.

Washington also argues his failure to maintain Z.'s health insurance was not willful because Collins prevented him from adding Z. back to his company-provided health insurance due to the delay in obtaining a paternity affidavit. The extra steps were necessary to add Z. back to Washington's insurance coverage outside of the open-enrollment period.

The paternity order specifically required Washington to "maintain health insurance for the minor child so long as same is available through his employment at a reasonable cost." Z. was put on Washington's health insurance in 2013 after the paternity order was entered. However, Washington removed Z. from his health insurance approximately one year later. Washington claimed Collins had complained the copays were too high and he and Collins agreed to move Z. to Hawk-I insurance. Collins stated this was false and the idea was Washington's.

Regardless of the parties' conversations, Washington admitted he removed Z. from his health insurance without confirming he was insured through another program:

> Q. So when [Z.] was removed from your John Deere Healthcare insurance, were you informed by [Collins] that there was another insurance in place or did you not know if your son had insurance at that time? A. At that time I didn't know if my son had insurance.

Collins testified she was not made aware that Z. was uninsured until she attempted to take him to the doctor and his insurance card was not approved. Washington's removal of Z. from his company health insurance was in violation of the requirements of the paternity order. There is substantial evidence supporting the court's finding Washington in contempt for failure to maintain health insurance for Z.[3]

The several grounds for contempt were raised in one application for rule to show cause. Because we find substantial evidence supports one of the grounds for contempt alleged in the application, we annul the writ of certiorari.

**(4) Impermissible Stereotyping.**

Throughout his brief on appeal, Washington cites to alleged examples of the court's impermissible stereotyping and bias based on Washington's race and socio-economic status including the court's statements about Washington's flirtatious behavior; the court's order that Washington pay a larger portion of his bonus for child support than is typical in other cases; the court's finding that visitation should be expanded and then the order curtailing it;[4] the court's statements respecting Washington's references to his education and educational goals for the children; and attempts by the court to chill Washington's representation in the rulings made to objections during the modification hearing.

---

[3] We are unable to discern from the court's ruling on the application for modification if the court twice adjudicated Washington in contempt of court or whether it adjudicated Washington in contempt only once but on two grounds.

[4] In the ruling on the application for modification, the court found "it is in the best interests of the minor child to modify visitation to increase the contact he has with his father," but also modified the summer-visitation time from four weeks to two.

We take any complaints of racial bias very seriously and closely examine the record for any such evidence.

On our de novo review of the record, we find no evidence Washington's race, education, or socio-economic status affected the court during these proceedings. The court's statements about and consideration of Washington's admitted flirtatious behavior with Collins were relevant to the reason Collins refused to communicate with Washington other than through text messaging. Further, while we have concluded the court's order respecting the percentage of Washington's bonus to be paid for child support was not equitable, there is simply no evidence the court's determination was based upon impermissible bias.

Washington contends the court's ruling on the application for modification reflects impermissible bias because it limited his visitation with Z. after finding visitation should be expanded. The court did reduce the summer visitation from four weeks to two weeks. However, the court did modify and expand the regular visitation from every other weekend from Friday at 5:00 p.m. to Sunday at 6:00 p.m. to every other weekend from Friday at 6:00 p.m. to Monday at 8:00 a.m. We do not view this ruling as reflecting impermissible bias but rather reflecting consideration of Washington's inability to give timely notice of summer visitation resulting in Washington not receiving any summer visitation in the years of 2013, 2014, 2015, and 2016. This record reveals a parent that was not overly concerned about receiving summer visitation.

Further, read in context, the court's statements regarding Washington's references to time expended on his education and educational goals for the children are critical of Washington, but we view it as the court's effort to explain

that notwithstanding Collins' lower educational achievements, she is still a capable parent. Moreover, we fail to see how the criticism reflects racial bias. Last, our review of the transcript does not indicate the court's rulings on objections were unfair. The court frequently reminded the parties the proceedings were heard in equity and, thus, objections would be noted for consideration by the court.

We find the court appropriately considered the facts at hand and there is no evidence the court relied upon impermissible bias in reaching its determinations in this matter.

**(5) Attorney Fees.**

Washington also challenges the court's order that he pay $5401.25 towards Collins' trial attorney fees. We review the district court's decision to order attorney fees for an abuse of discretion. *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). "[W]e give the district court considerable discretion in determining whether it should award attorney fees at the district court level." *Id.* at 639.

Iowa Code section 600B.26 provides, "In a proceeding to . . . modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees." The court ordered "based on the great disparity in income[5] and further as a consequence of the finding of contempt, [Washington] shall pay the full amount of [Collins'] attorney fees to defend this action and to prosecute the contempt action."[6] Washington unsuccessfully sought modification of physical care and was not successful in proving Collins guilty of

---

[5] The court found Washington's yearly income to be $99,552 and Collins' to be $17,817.80.

[6] Collins was entitled to cross-appeal on the issue of attorney fees requested by Collins and not awarded by the district court but did not do so.

contempt. As such, Collins was essentially the prevailing party. We do not find the court abused its considerable discretion in awarding Collins reasonable attorney fees.[7] *See In re Marriage of Grady-Woods*, 577 N.W.2d 851, 854 (Iowa Ct. App. 1998) ("The court should make an attorney fee award which is fair and reasonable in light of the parties' financial positions.").

In its modification ruling, the district court initially stated the attorney-fee award was based on the disparity in the parties' incomes and the findings of contempt. Subsequently, in an order filed post-ruling, the district court amended its attorney-fee ruling to provide "due to the great disparity in the incomes of the parties, [Washington] shall pay $5401.25 towards the attorney fees of [Collins]."[8] Although we have concluded Washington was not properly cited with contempt for failure to give notice of summer visitation, because the amended attorney-fee ruling was only premised upon the modification action and disparity of incomes, we need not remand for a re-dispositional hearing. Collins was the prevailing party and we agree there is a substantial disparity of incomes. *See Marriage of Michael*, 839 N.W.2d at 639 ("We may also consider whether a party resisting the modification petition was successful, and whether a party has been obliged to

---

[7] We note Washington's contention that the attorney fee award was improper because Collins did not provide an itemization of attorney fees. However, Washington cites no authority for this proposition. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

[8] In its June 26, 2017 order, the district court ordered Washington to pay Collins' attorney fees in the amount listed in Collins' Exhibit J, $5401.25. Collins subsequently submitted a supplemental affidavit respecting attorney fees on June 26 stating the total amount of attorney fees Collins' was required to pay from the initiation of the instant litigation was $9145. However, on July 5, 2017, the court entered an order directing Washington to pay only $5401.25 because the supplemental affidavit did not itemize the hours spent, the dates of service, or the hourly rate charged, and Washington "shall be responsible for are those [fees] that were known and identified at the contested hearing and to which no testimony or argument in resistance thereto was given."

defend the trial court's decision on appeal."). The amount of attorney fees awarded is reasonable and we affirm.

**(6) Appellate Attorney Fees.**

Last, both parties request appellate attorney fees. "An award of appellate attorney fees is not a matter of right but rests within our discretion." *In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Id.*

While he requests appellate attorney fees, Washington states he did not incur attorney fees on appeal as the legal work on appeal was done pro bono. Thus, we find Washington has no need for appellate attorney fees and deny his request. Washington is unsuccessful on appeal in his request for modification of physical care and is not successful in overturning his contempt adjudication, although we agree one ground for the contempt adjudication was not proved. On consideration of the parties' respective abilities to pay and Washington's limited success on appeal, we order Washington to pay $2500 of Collins' appellate attorney fees.

**III. Conclusion.**

We conclude the district court correctly found no substantial change in circumstances warranting modification of the physical-care of Z. We do, however, find the court's order respecting the portion of Washington's bonus for child support was not equitable, and modify the provision in accordance with this opinion. We find the court did not err in determining Washington was in contempt for violation

of health-insurance provision of the paternity decree, but conclude the court erred in finding Washington in contempt for failure to provide summer-visitation notice. Inasmuch as only one application for rule to show cause was filed by Collins, we annul the writ of certiorari. We find no abuse of discretion in the district court's attorney-fee award. Washington is ordered to pay $2500 of Collins' attorney fees incurred on appeal.

**AFFIRMED AS MODIFIED; WRIT ANNULLED.**