**IN THE COURT OF APPEALS OF IOWA**

No. 22-1701
Filed June 21, 2023

**IN RE THE MARRIAGE OF WILLIAM JOSEPH REINSBACH
AND KAREN LEE REINSBACH**

**Upon the Petition of
WILLIAM JOSEPH REINSBACH,**
        Petitioner-Appellant,

**And Concerning
KAREN LEE REINSBACH,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dickinson County, Shayne Mayer,

Judge.


        An ex-husband appeals denial of a petition to modify spousal-support

payments.  **AFFIRMED AS MODIFIED.**


        Brandon J. Krikke and Ashley A. DeBoer of Dekoter, Thole, Dawson,

Rockman, & Krikke P.L.C., Sibley, for appellant.

        Joseph L. Fitzgibbons and Scot L. Bauermeister of Fitzgibbons Law Firm,

L.L.C., Estherville, for appellee.


        Considered by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

William (Bill) Reinsbach appeals from an order denying his petition to modify spousal-support payments to ex-wife Karen Reinsbach. Bill claims a substantial change in his health and earnings capacity due to his disability. He also claims the district court abused its discretion in denying his request for attorney fees, and both parties request appellate attorney fees. We affirm the district court's order as modified, denying Bill's request to terminate his lifetime spousal-support obligation but reducing the monthly obligation from $1500 to $1125. We also find no abuse of discretion in denying Bill's request for attorney fees, and we deny both parties' requests for appellate attorney fees.

## I.      Backgrounds Facts and Proceedings

Bill and Karen married in September 1979 and divorced in September 2015. By stipulation, Karen was awarded spousal support of $3000 per month for twenty-four months and $2500 per month in spousal support after that, payable "until the death of either party, Karen's remarriage, or until she becomes self-supporting at a lifestyle to which she was accustomed to during the marriage."

In March 2016, Bill petitioned for a modification based on "a substantial change in [his] earning capacity" after a job change. In October 2016, the parties stipulated to reduce the spousal-support payment to $1500 per month going forward, terminating under the same conditions previously agreed upon.

In July 2021, Bill filed another petition requesting a modification, at issue here. This time, he sought modification based on "material and substantial changes in [his] health and earning capacity," relying on his permanent disability

(as found by the Social Security Administration) and the related reduced income and earnings capacity.

Bill was born in 1961. Since the divorce, he has continued living in Dickinson County with his current wife. In 2006, he began working for a manufacturer in sales management. He earned a base annual salary of more than $70,000 plus commissions that could take his total annual compensation over $200,000. In early 2015, his employer told him changes were coming to his compensation. Though he did not know specifics at the time, he knew the company was not doing well financially. In March 2016, his employer notified him his annual compensation would be $90,000 with no commission, which led to him filing the first petition for modification. He soon left the manufacturer, collected unemployment for a time, and began working in sales for an agricultural equipment dealer in June 2016. His salary for the dealer was $3333 bi-weekly. From 2014 to 2018, Bill also served as the elected mayor of Milford, but this income was not significant compared to his full-time work.

Around June 2019, the dealer fired Bill because he did not reach sales goals that Bill described as "not possible." He again collected unemployment for a time, and later he began work as manager of a grain co-op. Bill left employment there in the summer of 2020. He again began collecting unemployment, and he testified that he could not find suitable employment through July 2021.

Bill's Social Security statement showed he earned the following annual wages beginning with 2007, the first full year he worked for the manufacturer:

| Year | Annual Earnings |
|------|-----------------|
| 2007 | $90,548 |
| 2008 | $83,418 |
| 2009 | $117,019 |
| 2010 | $156,571 |
| 2011 | $100,088 |
| 2012 | $121,316 |
| 2013 | $173,422 |
| 2014 | $211,887 |
| 2015 | $157,904 |
| 2016 | $96,298 |
| 2017 | $87,520 |
| 2018 | $92,452 |
| 2019 | $55,754 |
| 2020 | $64,369 |

The start of Bill's health problems was in 2005, after he was injured at a different co-op. This injury led to a workers' compensation claim, which was still pending at the time of trial. As of trial, Bill had undergone seven back surgeries, one ankle surgery, two knee surgeries, and three shoulder surgeries; the last two back surgeries occurred in 2020 and 2021, and four or five of the back surgeries occurred during the marriage. He testified to his current health during trial:

> I have trouble walking. I have trouble standing. I have balance issues. I hurt all the time. There's not much I can do. I can sit for about a half hour. I can't stand longer than a couple minutes. The back of my knees, I can't drive for more than about a half hour without getting out and stopping. I'm—my health is just—it just deteriorates.

The district court observed that Bill had "visible mobility issues" during his time in the courtroom.

In March 2021, Bill applied for federal disability benefits and was found to have been disabled as of September 2020. At the time of trial, Bill received $2811 per month in disability payments, or $33,732 annually, which he claims as his sole source of income against nearly $4600 in monthly expenses. He testified that his

current wife pays for the remainder of his share of the household expenses. He does not believe he will be able to return to work in any capacity close to his prior income, and he expects his mobility and health will not improve. In Bill's words, his "body is falling apart."

Karen was born in 1960. She was a cosmetologist during marriage, moving with Bill every few years as he found a new job and establishing her cosmetology business in a new community. She moved to South Dakota after the divorce. At the time of trial, she worked thirty to thirty-five hours per week in a salon at a senior living center. She is an independent contractor and reports significant business expenses. Karen's exact income is hard to decipher from her tax returns and trial testimony, but on her financial affidavit she claimed $2306.70 in monthly net income, including $1500 in monthly spousal support and an additional $400 per month in rent from a family member who lives with her. Karen testified she donates 10% of her annual income to her church, and her tax records suggest she gives more than this to church or other charities (as much as $10,000 per year). Karen does not believe her current standard of living is anywhere close to her life during the marriage, when she and Bill enjoyed international and cross-country vacations, boating on the Iowa Great Lakes, and other luxuries.

After hearing this evidence, the district court denied Bill's petition for a modification, finding no substantial change in circumstances, and ordered that spousal-support payments continue unmodified. The court also denied Bill's request for attorney fees. Bill appeals.

## II.    Standard of Review

We review spousal-support-modification decisions de novo.  *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014); Iowa R. App. P. 6.907.  "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us."  *Sisson*, 843 N.W.2d at 870 (quoting *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013)).  "[W]e . . . will disturb the ruling only when there has been a failure to do equity."  *Id.* (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)).

## III.    Discussion

The General Assembly has empowered the courts to modify spousal support only "when there is a substantial change in circumstances."  Iowa Code § 598.21C(1) (2021).  "[T]he changed circumstances must be material and substantial, essentially permanent, and not within the contemplation of the court at the time of the decree."  *Sisson*, 843 N.W.2d at 870–71.  When a party has obtained a prior modification, the substantial-change analysis is limited to facts that arise after the intervening modification.  *See In re Marriage of Full*, 255 N.W.2d 153, 158 (Iowa 1977).  The relevant factors are in the Code, and the most pertinent here concern "[c]hanges in the employment, earning capacity, income, or resources of a party" and "[c]hanges in the physical, mental, or emotional health of a party."  Iowa Code § 598.21C(1)(a), (e).  Bill had the burden to prove one or more of these factors by a preponderance of the evidence.  *In re Marriage of Lee*, 486 N.W.2d 302, 304 (Iowa 1992).

On our de novo review, we disagree with the district court and find there was a substantial change in circumstances.  While we do not believe that Bill's

spousal support obligation should terminate outright, equity requires a reduction in his monthly obligation, given Bill's substantial decline in health and earning capacity.

In 2016, Bill was earning nearly $7000 per month in gross wages. His present earnings have declined by more than half, to $2811 per month in disability. Bill's testimony that his income does not cover his share of reasonable expenses in his new marriage was undisputed. We are also convinced that the transition of Bill's earnings potential from wages to disability payments is roughly akin to mandatory retirement or other circumstances requiring an exit from the workforce, which have long been recognized as a time ripe for modification. *See In re Marriage of Gust*, 858 N.W.2d 402, 418 (Iowa 2015) ("[F]uture retirement is a question that can be raised only in a modification action subsequent to the initial spousal support order."); *Toney v. Toney*, 239 N.W. 21, 21–22 (Iowa 1931) (mandatory retirement, from $260 in wages to $95 in pension, was a substantial change in circumstances).

Given Bill's dramatic change in health and income, we must consider whether such a decline was contemplated at the time of either the divorce or the previous modification. *See In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). In the argument section of her brief, Karen asserts repeatedly that Bill's disability was contemplated by the parties, but she fails to cite the record a single time—in violation of our rules of appellate procedure. Iowa Rs. App. P. 6.903(2)(g)(3); 6.904(4). Assuming without deciding that Karen has not waived her claim for failure to comply with the rules, we find Bill has the better argument. While some age- and health-related decline was reasonably expected by these

parties, Bill testified that he anticipated improvement or a plateau for his condition based on what physicians told him, rather than the serious decline that left him permanently disabled. Karen, for her part, dissembled when asked whether she anticipated Bill's back injury would eventually disable him, claiming: "I don't know how to answer that question."

We find a substantial change in circumstances because the parties did not contemplate that Bill's health would deteriorate so dramatically—and that his annual earnings capacity would plummet from $200,000 or $87,000 in wages to about $33,000 in disability payments—while he was otherwise still in his working years. Bill's dramatic change in health and related earnings capacity are not the type of health problems that are "reasonable and ordinary changes that are likely to occur"; they are more like the type of "unexpected calamity" that can serve as the basis for modification. *In re Marriage of Skiles*, 419 N.W.2d 586, 589 (Iowa Ct. App. 1987); *see also In re Marriage of Reis*, No. 01-1022, 2002 WL 1072085, at *2 (Iowa Ct. App. May 31, 2002) (holding that, while parties knew of wife's fibromyalgia diagnosis and reasonably expected some progression, they could not have reasonably anticipated the wife would become disabled and unable to work).

In weighing the equities and statutory factors, we have considered Bill's argument that his obligations should be reduced because Karen now donates a significantly higher proportion of her income than they did during the marriage. Our case law recognizes this is a permissible consideration in evaluating spousal support. *See In re Marriage of Stenzel*, 908 N.W.2d 524, 536 (Iowa Ct. App. 2018). That said, we are not sure this fact moves the needle much in this case.

We have also considered Karen's argument (again made without citation to the record) that Bill could seek work but chooses not to. At trial, Karen did not materially undermine Bill's evidence of disability, which was proven by the Social Security Administration's determination that he was disabled and entitled to disability benefits. But Bill also failed to put on evidence that he could not seek *any* work to supplement his disability payments, and we give some weight to the district court's observation that Bill's ability to go boating—including getting on and off the dock without assistance—is at least suggestive of some additional earnings capacity.

We also credit the district court's observation that Bill "bristled" at the idea of selling his pleasure boat to fulfill his spousal-support obligations to Karen, and our reading of the transcript confirms the court's observation that Bill was "evasive" and "his claim of lack of memory [was] not credible." By Bill's admission, he sold the boat to his current wife at some point, though the record does not make clear whether the transaction was legitimate or part of asset-sheltering shenanigans. Regardless of whether any ill intent prompted the sale, we rely on our common sense to recognize that the continued operation and maintenance of the boat is a substantial luxury expense enjoyed by Bill, and this undermines his claim to at least some extent.

Based on these competing considerations, we are left to decide what amount of spousal support is appropriate given Bill's current earning capacity and health. Bill does not argue for a specific dollar amount in his brief, and Karen argues that Bill should continue paying $1500 per month—the same as he was paying with more than double the income in 2016. We start with the baseline that

Bill now earns about half what he did in 2016, and we adjust upwards significantly in light of Bill's unwillingness to liquidate luxury assets (like the boat and other expenses attendant to life in a resort community), as well as his potential to supplement his disability payment with wages or by drawing down his retirement accounts. We conclude Bill should pay Karen 75% of the $1500 per month obligation: $1125 per month, and we modify the decree accordingly.

## IV.    Attorney Fees

Bill urges that the district court erred in not requiring Karen to pay his attorney fees at trial, and he also urges that Karen should pay his attorney fees on appeal. Karen also asks for appellate attorney fees. Both the district court and our court have considerable discretion in awarding attorney fees in dissolution matters. Iowa Code § 598.36; *see McDermott*, 827 N.W.2d at 687; *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007).

We affirm the district court's decision to require the parties to pay their own fees, as Bill identified nothing clearly untenable or unreasonable about the fee decision. We similarly exercise our discretion to require the parties to pay their own attorney fees on appeal. Neither party has tremendously disparate incomes or financial resources at this stage of life, and while Bill did partially prevail on appeal, Karen had a duty to defend the district court's decision and could also claim a partial victory.

## V.    Disposition

We affirm the district court's judgment as modified. We reduce Bill's monthly spousal-support payment to Karen, from $1500 per month to $1125 per month, to terminate upon the same conditions as previously agreed by the parties.

This change in payment is effective as of the date Bill petitioned for modification. *See In re Marriage of Schradle*, 462 N.W.2d 705, 708 (Iowa Ct. App. 1990). The district court is directed to enter any orders necessary to carry out this opinion. Each party will bear their own attorney fees on appeal. Costs on appeal are assessed equally between the parties.

**AFFIRMED AS MODIFIED.**